**David A. VanARSDALL, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Aug. 23, 1995.

W. Thomas Dillard, Kenneth F. Irvine, Jr., Ritchie, Fels & Dillard, Knoxville, for Appellant.

Charles W. Burson, Attorney General and Reporter, Jeannie Kaess, Assistant Attorney General, Nashville, James N. Ramsey, District Attorney General, Janice G. Hicks, Assistant District Attorney General, Clinton, for Appellee.

## OPINION

WHITE, Judge.

Appellant, David A. VanArsdall, appeals his conviction for especially aggravated sexual exploitation of a minor pursuant to Rule 3, Tennessee Rules of Appellate Procedure. While he frames five issues on appeal, they essentially are three:

> whether the court erred when it refused to accept the tendered plea agreement;

> whether appellant's conduct constituted a violation of Tennessee Code Annotated Section 39–17–1005; and

> whether the court erred in refusing to require election by the prosecution and in instructing the jury.

Appellant, originally charged with misdemeanor child abuse, was indicted for the offense of especially aggravated sexual exploitation of a minor.[1] The indictment alleged that VanArsdall committed the offense on or about May 9, 1991, in that he did

---

1. Tenn.Code Ann. § 39–17–1005 (1991 Repl.).

unlawfully and knowingly transport a minor D.H.[2], age 11, to participate in the performance of sexual activity or simulated sexual activity which is patently offensive, to wit: masturbation, in violation of TCA 39–17–1005.

Several pretrial motions directed at clarifying and challenging the charged conduct were filed.[3] After the trial court denied motions to dismiss, an interlocutory appeal was unsuccessfully sought.

Thereafter, VanArsdall, pursuant to a plea agreement, tendered a plea to the reduced charge of child abuse. The agreement anticipated an eleven month, twenty-nine day suspended sentence, with ten days incarceration. The court rejected the proposed agreement and VanArsdall withdrew his plea.

At trial, the jury convicted appellant of especially aggravated sexual exploitation of a minor. That testimony, viewed in the light most favorable to the prosecution, was that appellant, while working as a self-employed private investigator, was retained by a woman seeking a divorce who suspected her husband of an extramarital affair. During the course of his investigation, VanArsdall learned that his client and her children claimed to have suffered emotional and physical abuse, and possibly, sexual abuse. VanArsdall befriended the children, visited in the home, and determined that he would take them on a camping trip individually, ostensibly for the purpose of obtaining information helpful to the divorce.

VanArsdall picked up his client's daughter to take her on the camping trip with he and his wife. His wife never arrived. During the course of the trip, VanArsdall talked to the child about sex, played tapes of people presumably engaging in sex, and showed her sexually explicit magazines.

After arriving at the campsite, VanArsdall asked the young girl to pose nude for him. He suggested she take a "white pill" to calm down. He also exposed himself to her, explained masturbation, masturbated in front of her, and asked her to masturbate herself. The child simulated masturbation under the sleeping bag by moving her hand under the covers but never actually touched her private parts. Eventually VanArsdall returned the child to her home. He later took the brother camping, apparently without incident.

We find appellant's conduct, as established clearly by the state's evidence, to be deplorable. He abused a position of trust, traumatized a young child, and worsened the already difficult experience that a young child embroiled in a bitter divorce battle faces. Our job, however, is not to evaluate the moral depravity of appellant's actions. Rather, we must determine whether appellant violated the statute under which he was convicted and whether he was afforded the constitutional safeguards to which he is entitled.

We address first VanArsdall's contentions that the negotiated plea agreement was wrongfully rejected by the trial judge. The Tennessee Rules of Criminal Procedure provide that parties to a criminal action may enter into negotiations which result in agreements. These agreements may recommend *or agree not to oppose a particular sentence, or they may agree that a particular sentence is appropriate.* Tenn.R.Crim.P. 11. The court is not obligated to accept any agreement, but if the agreement is to a specific sentence, the court must give the defendant an opportunity to withdraw the plea if the agreement is not accepted.

Generally, a guilty plea may be accepted only after an informed waiver of rights and an acknowledgment of facts sufficient to support a conviction. Additionally, a defendant who wishes to enter a plea but does not wish to acknowledge guilt may, in the court's discretion, plead guilty based on a representation that the plea is in the defendant's best interest. This plea, commonly known as an *Alford* plea, is acceptable upon a showing that it is voluntarily and intelligently

---

2. Consistent with court policy, because the victim is a minor, she will not be referred to by name.

3. Appellant filed a Motion for a Bill of Particulars, Supplemental Motion for a Bill of Particulars, and three Motions to Dismiss, one based on vagueness, one on duplicitousness, and one for failure to charge an offense.

entered. *North Carolina v. Alford*, 400 U.S. 25, 39, 91 S.Ct. 160, 168, 27 L.Ed.2d 162 (1970).

A defendant's right to enter an *Alford* plea, or any plea, is not absolute, but is subject to the appropriate exercise of discretion by the trial judge. When a defendant challenges the court's failure to accept a plea, our obligation as an appellate court is to determine if an abuse of discretion occurred. *State v. Williams*, 851 S.W.2d 828, 830 (Tenn. Crim.App.), *perm. to appeal denied*, (Tenn. 1992). If no substantial evidence supports the trial judge's decision, an abuse will be found. *Id.*

Here the trial judge believed that the conduct complained of constituted a serious felony offense against a little girl. Given the nature of the crime, the trial judge believed that appellant's acknowledgment of guilt was an important consideration in the overall evaluation of the terms of the plea agreement. Under these circumstances, we do not find an abuse of discretion in the rejection of the plea agreement.

The more difficult arguments raised by appellant involve the nature of the offense and the proof in this case. Appellant alleges that he was tried and convicted of an offense not stated in the indictment, not cognizable under statute, and not proven at trial.

In 1989 with the passage of the Criminal Sentencing Reform Act, the legislature abolished all common-law offenses. Before conduct can now constitute a violation of the criminal law, it must be "defined as an offense by statute, municipal ordinance, or rule authorized by and lawfully adopted under a statute." Tenn.Code Ann. § 39–11–102(a) (1991 Repl.). This provision is essential to two of the stated objectives of the criminal code:

[to g]ive fair warning of what conduct is prohibited, and guide the exercise of offi-

cial discretion in law enforcement, by defining the act and the culpable mental state which together constitute an offense; [and to g]ive fair warning of the consequences of violation....

Tenn.Code Ann. § 39–11–101(2) & (3) (1991 Repl.).

Thus, our code recognizes the importance of clearly defined criminal offenses. Clear definition is essential not only for the benefit of the accused but also to comply with state and federal constitutional obligations. Tenn. Const. Art. 1, §§ 8 & 9; U.S. Const. amend. VI, XIV. If an offense is not defined so as to afford persons of ordinary intelligence fair notice of what conduct is prohibited, it violates due process. *State v. Netto*, 486 S.W.2d 725, 728 (Tenn.1972).

In addition to clear definition in the code, an offense must be clearly described in the indictment. Tenn.Code Ann. § 40–13–202 (1990 Repl.). The description in the indictment serves three purposes: to inform the defendant of the precise charges to be answered; to inform the court as to the applicable punishment; and to protect the defendant against double jeopardy. *Pope v. State*, 149 Tenn. 176, 258 S.W. 775 (1924). Additionally, the indictment must contain all the essential elements of the offense. *State v. Morgan*, 598 S.W.2d 796, 797 (Tenn.Crim. App.1979). An offense is adequately charged if the indictment tracks the language of the statute or uses equivalent words. *Patty v. State*, 556 S.W.2d 776, 780 (Tenn.Crim.App. 1977).

The indictment must also allege that the defendant violated the law. Therefore, in addition to alleging the elements, the indictment must state facts which constitute the offense. *Warden v. State*, 214 Tenn. 391, 381 S.W.2d 244, 245 (1964).

Here, the accused was charged with violating a statute which included four elements including a defined criminal intent.[4] The

---

4. Tennessee Code Annotated Section 39–17–1005 requires that a person "knowingly" commit certain acts. "Knowing" is defined as follows:

 "Knowing" refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the con-

duct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result.

Tenn.Code Ann. § 39–11–106(20) (1991 Repl.).

first element—the mental state—requires that an offender act knowingly. The second two elements of the offense set forth the prohibited actions. These actions include promoting, employing, using, assisting, transporting, or permitting a minor to participate in the performance or in the production of material. The third element—material—is defined broadly, but is largely limited to tangible items.[5] The fourth element limits the second by specifying the nature of the material which must be involved to violate the statute. First, the material must include a minor. Second, the minor must be engaged in either sexual activity or simulated sexual activity that is patently offensive. The statute specifically defines "sexual activity"[6] and "patently offensive."[7] "Simulated," which is not defined, must be given its ordinary meaning.[8]

■ Thus, in charging an offense under Tennessee Code Annotated Section 39–17–1005, the indictment must allege that the offender knowingly engaged in one of the proscribed actions with regard to material, as specified, which included a minor engaged in one of two prohibited activities. Likewise, in convicting an offender under this section, the state must establish proof beyond a reasonable doubt of each of the elements.

The indictment charging appellant clearly alleged the requisite mental state. It further alleged as the proscribed action that appel-

lant transported a minor for purposes of participation in certain activities. It did not address the third element of the offense—material—but alleged instead that appellant transported a minor to participate in sexual or simulated sexual activity, specifically masturbation.

The concerns arising from this indictment are four-fold. Does the statute only apply when "material" which includes minors engaged in sexual or simulated sexual activity is involved? If so, must the state allege the performance or production of material in the indictment? If pleading is not required, is there sufficient proof to convict of the offense? And finally, should the state have been required to elect which circumstance it relied on for conviction?

■ At the outset, we have noted that in Tennessee the purpose of the codification of all criminal offenses is to advise the public as to what conduct is criminal. This statute is clearly directed at participation in the "performance or ... production of *material*." Tenn.Code Ann. § 39–17–1005(a) (1991 Repl.) (emphasis added). The indictment contains no allegations regarding material. Nonetheless, if the indictment states an offense it does not matter that the literal language of the statute is not employed.

The state's position, however, is that "material" is not an essential element of the

---

5. Tennessee Code Annotated Section 39–17–1002(2) defines "material" as

    (A) Any picture, drawing, photograph, motion picture film, videocassette tape or other pictorial representation; or
    (B) Any statue, figure, theatrical production or electrical reproduction.
Tenn.Code Ann. § 39–17–1002(2) (1991 Repl.).

6. "Sexual activity" means any of the following acts:

    (A) Vaginal, anal or oral intercourse, whether done with another person or an animal;
    (B) Masturbation, whether done alone or with another human or an animal;
    (C) Patently offensive, as determined by contemporary community standards, physical contact with or touching of a person's clothed or unclothed genitals, pubic area, buttocks or breasts in an act of apparent sexual stimulation or sexual abuse;
    (D) Sado-masochistic abuse including flagellation, torture, physical restraint, domination

or subordination by or upon a person for the purpose of sexual gratification of any person;
    (E) The insertion of any part of a person's body or of any object into another person's anus or vagina, except when done as part of a recognized medical procedure by a licensed professional;
    (F) Patently offensive, as determined by contemporary community standards, conduct, representations, depictions or descriptions of excretory functions; or
    (G) Lascivious exhibition of the genitals or pubic area of any person.
Tenn.Code Ann. § 39–17–1002(7) (1991 Repl.).

7. " 'Patently offensive' means that which goes substantially beyond customary limits of candor in describing or representing such matters...." Tenn.Code Ann. § 39–17–1002(4) (1991 Repl.).

8. Webster's New World Dictionary defines "simulate" as giving a false indication or appearance or pretending.

offense. Thus, the state contends that appellant (1) transported the minor (2) to participate in a performance of (3) sexual activity or simulated sexual activity. If transporting a minor to perform such an activity is an offense under this statute, clearly the state had adequately plead and proved its case. On the other hand, if performance or production of "material" is required, we must determine whether the indictment is adequate, despite the absence of any allegation regarding material, and whether the proof is sufficient to convict.

We cannot agree with the state's contention that participation in "the performance or production of material" is not an essential element of the offense in this statute. We are required to construe criminal statutes according to the "fair import of their terms." Tenn.Code Ann. § 39–11–104 (1991 Repl.). That construction requires reference to "judicial decisions and common law interpretations, to promote justice, and effect the objectives of the criminal code." *Id.*

Among the most prominent of the tenets of statutory construction is the requirement that courts must construe statutes so as to give effect to legislative intent. *Wilson v. Johnson County,* 879 S.W.2d 807, 809 (Tenn.1994). That intent is to be determined by the natural and ordinary meaning of the language.

Section 1005, the violation of which appellant stands convicted, is one of several offenses set out in the "Tennessee Protection of Children Against Sexual Exploitation Act of 1990." The other offenses, sexual exploitation and aggravated sexual exploitation, all employ the use of the term "material." The term is explicitly defined in the definitions section of the Act. The distinction between the three offenses is the nature of the prohibited actions. Thus, one who possesses proscribed material is guilty of a class E felony. One who promotes, sells, or distributes proscribed material is guilty of a class B felony, as is one who promotes, employs, uses, assists, transports or permits a minor to participate in performing or producing proscribed material. Tenn.Code Ann. §§ 39–17–1003—1005 (1991 Repl.).

Clearly, then, to be guilty of exploiting a minor, one must possess proscribed *material.* To be guilty of aggravated exploitation, one must promote, sell, distribute, transport, purchase, or exchange proscribed *material.* But, to be guilty of especially aggravated sexual exploitation, one must promote, employ, use, assist, transport or permit participation by a minor in the performance or the production of proscribed *material.* While the use of the word "performance" in conjunction with the common definition of material is nonsensical, it is consistent with statutory definition which includes theatrical productions and motion picture films. Tenn. Code Ann. § 39–17–1002(2)(A)(B) (1991 Repl.).

Additionally, reading the statute to prohibit performances without regard to material, as the state suggests, causes a strained application of the statute and of the word "material" as defined. Since "material" includes some nontangible items, the phrase "of material" must modify both "in the performance of" and "[in] the production of." To construe it otherwise, as appellant points out, would lead to this awkward result:

> It is unlawful for a person to knowingly ... transport a minor to participate in the performance ... which includes the minor engaging in (1) sexual activity; or (2) simulated sexual activity which is patently offensive.

Were that construction intended, the otherwise thorough definition section would have likely defined performance and would have limited the definition of material to tangible items.

We conclude that the plain meaning of the statute imposes liability only upon those who promote, employ, use, assist, transport or permit participation by a minor in the performance or production of proscribed material. We also conclude that such an interpretation is consistent with the legislative intent. That intent is evident in the three parallel, but different, statutes, the definitions section, the categorization of the offense as an offense against the public health, safety, and welfare, and other related statutes. For example, had the indictment alleged or the proof established that appellant photographed or

taped or drew the child performing the act, he would have engaged in the especially aggravated sexual exploitation of a minor.

Although not controlling, we note also the consistency of this interpretation in light of the legislative history and the Sentencing Commission Comments. Both refer to the Act as the "Child Pornography Bill." The generally accepted legal definition of pornography as that which is obscene and the Act's definition of material including sexual activity are similar. *Compare Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973) *with* Tenn.Code Ann. §§ 39–17–1002(2) & (7) (1991 Repl.).

▪ In this case the state alleges that appellant transported the child "to participate in the performance of sexual activity or simulated sexual activity which is patently offensive." Although, as we have noted, the indictment does not allege the performance or production of material, as required by the statute, it might still survive appellant's challenge if that allegation is implicit in the indictment. However, we find it is not. The use of the word "performance" limits the type of material which could be involved. While one can employ a minor to perform a theatrical production or perhaps, a motion picture film, the same is not true of a picture, drawing, statue, or figure. We find that none of those applicable types were alleged or proven to exist in this case. Therefore, we agree with appellant's contentions that the conduct alleged and established failed to constitute an offense under Tennessee Code Annotated Section 39–17–1005.

▪ In addition, and for ease in further review of this case should our initial conclusion prove incorrect, we also find error in the trial court's refusal to require an election by the state before submission to the jury. In a number of contexts, we have noted that due process requires the state to elect at the close of its proof in chief the particular offense for which it seeks conviction. *Burlison v. State,* 501 S.W.2d 801 (Tenn.1973). The requirement is based on three equally valid principles: adequate notice of the charges, avoidance of double jeopardy violations, and preservation of the right to a unanimous verdict. *State v. Shelton,* 851

S.W.2d 134 (Tenn.1993); *Burlison v. State,* 501 S.W.2d at 803. The third concern is the most serious for it threatens a long-established constitutional right: the right to assure that the jurors' verdict is unanimous before a conviction occurs. This right has been characterized as "fundamental." *Burlison v. State,* 501 S.W.2d at 804. As such, it requires special "precautions [by the court] to ensure that the jury deliberates over the particular charged offense, instead of creating a " 'patchwork verdict' based on different offenses in evidence." *State v. Shelton,* 851 S.W.2d at 137.

Here, in addition to this grave concern, we are also faced with the appellant's rigorous assertions that he was denied the opportunity to prepare his case since he was not informed of the precise charges. His numerous pretrial attempts to challenge and clarify the indictment proved futile.

The proof in this case establishes that appellant performed masturbation of himself, asked the child to masturbate him, and required the child to masturbate herself, which she simulated. The indictment alleged that the minor *participated* in either sexual activity or simulated sexual activity. If we are incorrect in our first conclusion that the performance or production of material is an essential element of this offense, then either of those three acts might establish this offense. Therefore, election was essential.

The failure to require election was compounded by the instructions given the jury. Although the indictment alleged that appellant "transported" the minor, the court instructed the jury that conviction could be based on promoting, employing, using, assisting, or transporting. Further, although the state specified that the sexual or simulated sexual activity was masturbation, the court instructed the jury on the entire panoply of sexual activity set forth in the statute. Thus, the jury was free to convict if appellant promoted, employed, used, assisted or transported a minor to participate in the performance or in the production of material which includes the minor engaging in sexual activity or simulated sexual activity.

The trial judge should have required the state to elect at the close of its proof the offense upon which it was proceeding. After election, the judge was obligated to charge the jury as to that offense. "[T]he instruction ... should be limited to the precise offense alleged in the charging instrument to the exclusion of the remaining theories." *State v. Wayne E. Mitchell,* No. 01C01–9209–CR–00295, slip. op. at 6, 1993 WL 65844 (Tenn.Crim.App., Nashville, March 11, 1993), *perm. to appeal denied,* (Tenn.1993).

For all these reasons we reverse and dismiss appellant's conviction for especially aggravated sexual exploitation of a minor.

SUMMERS, J., and JOHN K. BYERS, Senior Judge, concur.