IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 10, 2012

**STATE OF TENNESSEE v. EMMETT HARTNEST, JR.**

**Appeal from the Circuit Court for Hardin County**
**No. 9368     C. Creed McGinley, Judge**

**No. W2011-02443-CCA-R3-CD  - Filed September 17, 2012**

The Defendant-Appellant, Emmett Hartnest, Jr., was convicted by a Hardin County jury of
driving under the influence (DUI), a Class A misdemeanor, and was sentenced as a Range
I, standard offender to eleven months and twenty-nine days, with Hartnest to serve ten days
in the Hardin County Jail before serving the balance of his sentence on supervised probation.
On appeal, Hartnest argues that: (1) the evidence is insufficient to support his conviction and
(2) his sentence was excessive.  Upon review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT
WILLIAMS and ALAN E. GLENN, JJ., joined.

Guy T. Wilkinson, District Public Defender; Richard W. DeBerry, Assistant Public Defender,
Camden, Tennessee, for the Defendant-Appellant, Emmett Hartnest, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney
General; Hansel Jay McCadams, District Attorney General; and Frankie K. Stanfill, Assistant
District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**FACTUAL BACKGROUND**

**Trial**.  Officer Charles Childress of the Savannah Police Department testified that
he saw a van leave a home on Shell Street and turn onto Hurt Street on May 11, 2010, at
approximately 11:00 p.m.  Because the van was moving fairly slowly, he decided to follow
it.  He saw the van turn from Perch Street onto Roosevelt Drive.  As Officer Childress
checked the license plate on the van, he noticed a beer can sitting on the van's bumper, which

indicated that the driver was possibly under the influence of an intoxicant. Officer Childress saw the van make "somewhat of a wide turn" onto Roosevelt Drive and followed it for a short distance before turning on his blue lights and siren. The vehicle stopped near the intersection of Washington Street and Roosevelt Drive. When Officer Childress approached the driver's side window, he saw that there were two people, other than the driver, inside the van and noticed that there was "a strong odor of an alcoholic beverage coming from the vehicle." He asked the driver of the van, later identified as Hartnest, to step away from the van so that he could determine whether the smell of alcohol was coming from him. Officer Childress asked Hartnest if he had been drinking, but he did not remember Hartnest's response. He checked Hartnest's license, which was valid. After talking with Hartnest, Officer Childress immediately detected a "strong" odor of alcohol coming from Hartnest's breath. When he asked Hartnest to complete some field sobriety tests, Hartnest informed him that he had some sort of physical impairment that prevented him from completing the tests that involved him walking in a straight line or standing on one leg. Because Officer Childress was unable to administer the standardized field sobriety tests, he administered three non-standardized field sobriety tests to Hartnest. Officer Childress said that he arrested Hartnest based on the totality of his observations:

> I [had] seen [Hartnest] drive, [I had seen] the obvious beer can on the bumper of the vehicle, [and I had observed] the odor [that] was coming from [Hartnest] when he was speaking. I took all of that into consideration[,] and that's when I made the arrest for driving under the influence.

After arresting Hartnest for DUI, Officer Childress took Hartnest to the Hardin County Hospital to obtain a blood sample. Once there, Officer Childress read Hartnest the State of Tennessee Implied Consent Law Advisement form, which states that an individual's refusal to submit to a chemical test to determine the alcohol or drug content of his or her blood will result in a suspension of that individual's driver's license. Hartnest signed the implied consent form at the hospital, and Officer Childress observed one of the employees of the hospital draw Hartnest's blood. The blood sample was forwarded to the Tennessee Bureau of Investigation (TBI) for testing.

On cross-examination, Officer Childress acknowledged that he did not make field notes in Hartnest's case. He also acknowledged that his citation did not mention that he observed Hartnest driving slowly, that he saw a beer on Hartnest's bumper, or that he witnessed Hartnest making a wide turn. Officer Childress read the narrative from his police report:

> [Hartnest] stopped . . . at the corner of Roosevelt [Drive] and Washington

[Street]. I noticed that [he] had an open Natural Ice can on the back bumper of his van. I asked [Hartnest] to step out. He had a strong odor of an alcoholic beverage on his breath.

[Hartnest] was given three field sobriety tests. Based on [his] performance on the tests, [Hartnest] was arrested for DUI. [He] did consent to a test to determine the alcohol in his blood.

Officer Childress said that the basis for Hartnest's stop was that he "had reason to believe[,] based on how [Hartnest] operated his vehicle, [and the fact that there was a] beer can on the bumper of the vehicle, . . . that a crime was being committed[.]" He admitted that the presence of the beer can did not necessarily mean that Hartnest was driving under the influence. He further admitted that one of the passengers in the van could have been responsible for placing the beer can on Hartnest's bumper. In addition, Officer Childress acknowledged that the odor of an alcoholic beverage emanating from an individual does not necessarily mean that the individual is impaired. Officer Childress said he was unable to administer the standardized field sobriety tests because of Hartnest's physical impairment. However, he was unable to recall the three non-standardized tests that formed the basis of Hartnest's arrest.

Officer Childress stated that he stopped Hartnest based on his slow driving, his wide turn, and the presence of a beer can on his bumper. He said that Hartnest complied with his requests to step out of the van and to provide his driver's license and registration.

Bethany McBride testified that she was a forensic scientist and special agent with the TBI. Her testing of Hartnest's blood sample revealed that he had a blood alcohol concentration of .13% at the time the sample was taken.

Hartnest declined to testify at trial. No proof was offered by the defense. Following the close of proof and deliberations, the jury convicted Hartnest of DUI.

**Sentencing Hearing.** At the sentencing hearing, the court admitted Hartnest's presentence report into evidence. Although the report showed that Hartnest had been previously convicted of DUI in Georgia, Hartnest claimed that he never entered a guilty plea to this offense. However, he admitted that he had attended a DUI school for this offense. The court characterized the DUI in Georgia as a "[p]rior history of violation whether it's a conviction or not." During Hartnest's statement of allocution, he accused Officer Childress of police brutality. When the State informed the trial court that the TBI had investigated Hartnest's allegations, the court stated:

What I have in front of me is what the jury heard in this case, which was overwhelming evidence of guilt.

Not just a little bit [of guilt], but one of those things if you're driving down a public street at night with a beer can on your bumper, you're going to get stopped ten out of ten times. . . .

. . . .

And [Hartnest] was intoxicated. There is no question in the Court's mind [that he was intoxicated, which was] confirmed by the evidence that was presented at court as well as the blood alcohol test.

At the conclusion of the sentencing hearing, the trial court imposed a sentence of eleven months and twenty-nine days, with Hartnest to serve ten days in the Hardin County Jail before serving the balance of his sentence on supervised probation.

## ANALYSIS

**I. Sufficiency of the Evidence.** Hartnest argues that the evidence is insufficient to support his conviction for DUI. He also apparently asserts, without citation to any supporting authorities, that his citation was somehow deficient because it failed to state the basis for his stop and failed to note that the arresting officer observed a beer can on the bumper of his van. We conclude that the evidence is sufficient to support his conviction.

The State, on appeal, is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support a finding by the trier of fact of guilt beyond a reasonable doubt." Guilt may be found beyond a reasonable doubt in a case where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)).

The trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). When reviewing issues regarding the sufficiency of the evidence, this court shall not "reweigh or reevaluate the evidence." Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). This court has often stated that "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659. A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citing State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982)).

Regarding Hartnest's argument that his citation for DUI was somehow deficient because it failed to state the basis for his stop and failed to note that the arresting officer observed a beer can on the bumper of his van, we conclude that he is not entitled to relief. The United States Constitution and the Tennessee Constitution state that a defendant is entitled to knowledge of "the nature and cause of the accusation." U.S. Const. amend. VI; Tennessee Const. art. I, § 9. Pursuant to State v. Hill, an indictment is valid if it contains sufficient information "(1) to enable the accused to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the accused from double jeopardy." 954 S.W.2d at 727 (citing State v. Byrd, 820 S.W.2d 739, 741 (Tenn. 1991); VanArsdall v. State, 919 S.W.2d 626, 630 (Tenn. Crim. App. 1995); State v. Smith, 612 S.W.2d 493, 497 (Tenn. Crim. App. 1980)). In addition, pursuant to Tennessee Code Annotated section 40-13-202, the indictment must

> state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner so as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment. . . .

T.C.A. § 40-13-202 (2006). Although the previous authorities refer to the requirements for indictments, they are also helpful in determining whether the misdemeanor citation in this case gave Hartnest proper notice of his charge. "The fundamental test of the sufficiency of an indictment is the adequacy of the notice to the defendant conveyed by its terms." Green v. State, 143 S.W.2d 713, 715 (Tenn. 1940). Upon review, we conclude that the misdemeanor citation provided adequate notice to Hartnest because it placed him on notice as to the charge, placed jurisdiction of the case squarely with the trial court, and foreclosed double jeopardy problems. See Hill, 954 S.W.2d at 727.

We also conclude that the evidence, viewed in the light most favorable to the State,

is sufficient to support Hartnest's conviction for DUI. Here, the State had to prove beyond a reasonable doubt that Hartnest drove or was "in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys . . . while . . . [u]nder the influence of any intoxicant[.]" T.C.A. § 55-10-401(a)(1) (2006). We note the statutory presumption regarding impairment:

> For the purpose of proving a violation of § 55-10-401(a)(1), evidence that there was, at the time alleged, eight-hundredths of one percent (.08%) or more by weight of alcohol in the defendant's blood shall create a presumption that the defendant's ability to drive was sufficiently impaired thereby to constitute a violation of § 55-10-401(a)(1).

Id. § 55-10-408.

Officer Childress testified that he stopped Hartnest because of Hartnest's driving and the presence of a beer can on the bumper of his van. After Officer Childress asked Hartnest to exit the van, he detected a "strong" odor of alcohol emanating from him. He also stated that Hartnest's poor performance on the three non-standardized field sobriety tests was indicative of his impairment. Most importantly, Hartnest's blood alcohol concentration was .13%, greatly in excess of the statutory presumption regarding impairment. As we previously stated, we will not "reweigh or reevaluate the evidence." Henley, 960 S.W.2d at 578-79. Accordingly, we conclude that there is sufficient evidence to sustain Hartnest's conviction for DUI.

**II. Sentencing.** Hartnest also argues that he should have received the minimum sentence of two days, rather than ten days, in the county jail; however, he has waived this issue because he provides no argument as to why he should receive the lesser sentence. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."); Tenn. R. App. P. 27(a)(7) (A brief shall contain "[a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on."). Waiver notwithstanding, we conclude that the trial court did not err in sentencing.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2006). However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State

v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Because the trial court considered the purposes and principles of the sentencing act, our review is de novo with a presumption of correctness. See id.

Sentences for misdemeanor offenses must be specific and in accordance with the principles, purpose, and goals of the Criminal Sentencing Reform Act of 1989. T.C.A. §§ 40-35-104, -302 (2006). The sentencing court is granted considerable latitude in misdemeanor sentencing. State v. Johnson, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999) (citing State v. Troutman, 979 S.W.2d 271, 273 (Tenn. 1998)). While a separate sentencing hearing is not mandatory in misdemeanor cases, the court must provide the defendant with a reasonable opportunity to be heard regarding the length and manner of the sentence. See T.C.A. § 40-35-302(a) (2006).

"[A] misdemeanor offender must be sentenced to an authorized determinant sentence[,]" and "a percentage of that sentence, which the offender must serve before becoming eligible for consideration for rehabilitative programs, must be designated." State v. Palmer, 902 S.W.2d 391, 394 (Tenn. 1995). Typically, a percentage not greater than 75 percent of the sentence should be fixed for a misdemeanor offender; however, an individual convicted of DUI may be required to serve 100% of his or her sentence. Id. at 393-94.

An individual convicted of a misdemeanor has no presumption of entitlement to a minimum sentence. Johnson, 15 S.W.3d at 518 (citing State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997); State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994)). The misdemeanor sentencing statute requires that the trial court consider the purposes and principles of sentencing and the applicable enhancement and mitigating factors when calculating the percentage of the sentence to be served in confinement prior to "consideration for work release, furlough, trusty status and related rehabilitative programs." T.C.A. § 40-35-302(d) (2006). However, there is no strict requirement that the trial court make findings on the record regarding the percentage of the defendant's sentence to be served in confinement:

> [W]hile the better practice is to make findings on the record when fixing a percentage of a defendant's sentence to be served in incarceration, a trial court need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute.

Troutman, 979 S.W.2d at 274 (footnote omitted).

Tennessee Code Annotated section 55-10-403(s)(1) specifies the minimum term of

confinement for DUI, first offense:

> [A] person convicted of violating § 55-10-401 for the first time shall be punished as follows: the court shall sentence the person to confinement in the county jail or workhouse for not less than forty-eight (48) hours nor more than eleven (11) months and twenty-nine (29) days[.]

T.C.A. § 55-10-403(s)(1) (Supp. 2008).

We conclude that the trial court did not err in sentencing Hartnest. After noting Hartnest's prior DUI in Georgia and his high blood alcohol concentration in this case, the trial court sentenced him to ten days in confinement rather than the minimum sentence of forty-eight hours, or two days, in confinement. We reiterate that an individual convicted of a misdemeanor has no presumption of entitlement to a minimum sentence. See Baker, 966 S.W.2d at 434. The record supports the trial court's findings. Accordingly, the sentence is affirmed.

## CONCLUSION

We conclude that the evidence is sufficient to support the conviction and that the sentence was proper. The judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE