IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
February 2, 2016 Session

## JOHN SMITH v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 0807885      Carolyn W. Blackett, Judge**

---

**No. W2015-00633-CCA-R3-PC  -  Filed May 27, 2016**

---

The petitioner, John Smith, appeals the post-conviction court's denial of relief from his convictions for first degree felony murder, second degree murder, aggravated burglary, and employment of a firearm during the commission of a dangerous felony. He argues that the post-conviction court erred in finding that he had received effective assistance of counsel. He further asserts for the first time on appeal that his conviction for employing a firearm during the commission of a dangerous felony should be vacated because the indictment failed to specify the underlying dangerous felony. Upon our review, the judgments of the post-conviction court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and TIMOTHY L. EASTER, JJ., joined.

Jeffrey S. Rosenblum, Murray Wells, and Arthur Horne (at post-conviction hearing); and Lance R. Chism (on appeal), Memphis, Tennessee, for the Defendant-Appellant, John Smith.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zenter, Assistant Attorney General; Amy P. Weirich, District Attorney General; Kevin R. Rardin and Glen C. Baity, Assistant District Attorneys General, for the Appellee, State of Tennessee.

### OPINION

This case arises from the August 2008 murder of Charles Beegle, Jr. For this offense, the petitioner was indicted by the Shelby County Grand Jury for first degree felony murder, second degree murder, aggravated burglary, and employing a firearm during the commission of a dangerous felony. After a jury trial, the petitioner was convicted as charged and sentenced to "an effective term of life imprisonment plus six

years." This court affirmed the conviction on direct appeal. State v. John Smith, No. W2011-01438-CCA-R3-CD, 2012 WL 4372547 (Tenn. Crim. App. Sept. 25, 2012), perm. app. denied (Tenn. Feb. 13, 2013). The following facts, as outlined on direct appeal, are relevant to the issues presented in this case:

> Lieutenant Walter Davidson with the Memphis Police Department was involved in arresting [the petitioner] after the wreck and placed him on a forty-eight-hour hold due to his intoxication. The next day, having no appearance of intoxication and able to communicate clearly, [the petitioner] was brought to the homicide bureau for questioning. After twice refusing to waive his Miranda rights, [the petitioner] was being prepared for return to the jail when he decided to talk to the officers. Upon being read his rights a third time, [the petitioner] waived them and ultimately gave two typewritten statements.

> In his first statement, [the petitioner] denied any responsibility for the victim's death but, instead, blamed the murder on his co-defendant, James Snipes. Specifically, [the petitioner] said that he and Snipes were driving around smoking marijuana when Snipes started talking about "making money." Snipes then stopped at the victim's house and said, "[L]et's go in." According to [the petitioner], before Snipes made it in the house, the victim spotted him and started chasing him. [The petitioner] said that Snipes and the victim "scuffled" and then he heard gunshots. He recalled that Snipes told him that he shot the victim because the victim grabbed him and would not let him go. According to [the petitioner], Snipes was armed with a .25 caliber automatic, but he was not armed. When questioned about the subsequent police chase, [the petitioner] admitted that he was in the backseat of the truck and armed with a .25 caliber automatic but claimed that it and the .380 belonged to Snipes.

> After taking [the petitioner's] first statement, officers learned that Jesus Lujan was in the truck with Snipes and [the petitioner] at the time of the murder and that [the petitioner] had been armed with a .38 revolver. The officers confronted [the petitioner] with the inconsistencies in his first statement. In his second statement, [the petitioner] admitted that his initial statement was not completely accurate. He confirmed that Lujan was in the truck with him and Snipes when they went to the victim's home and that he was armed with a .38 special revolver provided to him by Lujan. [The petitioner] also admitted that he entered the victim's house with Snipes. According to [the petitioner], after they entered the house, "'the victim s[aw] [Snipes] [and] chased him outside. They started [to] wrestle and

[Snipes] shot him to get him off and while the victim was on the ground, I shot him in the face.'" He gave the .38 special revolver back to Lujan after the shooting.

Defendant's Proof

[The petitioner] testified that the night before the shooting, he and Snipes were partying at another friend's house. He had been "smoking weed, taking ex- pills, snorting heroin, snorting powder and popping Xanax pills." Around 8:00 a.m. the next morning, [the petitioner], Snipes, and Jesus Lujan left in a blue Ford Sport Track with Snipes driving to go buy more marijuana.

Snipes drove them to the victim's house, although [the petitioner] did not know who lived in the house or who the victim was; he just thought they were going to buy marijuana. Snipes parked the truck, and [the petitioner] and Snipes got out and walked toward the house. Snipes was armed with a .25 caliber automatic. [The petitioner] lagged behind, and his vision of Snipes was blocked by a fence. When he walked around the fence, he saw that Snipes was not at the victim's front door, so he walked toward the back of the house. He was about to knock on the sliding glass door when Snipes came running down the hallway yelling for him to run. [The petitioner] grabbed a BB gun that was sitting next to the sliding glass door and ran toward the truck. When he was about five or ten feet from the truck, he "heard a couple of gunshots and . . . heard a guy scream and . . . heard James Snipes yell for [his] help." He ran back to help his friend and saw Snipes and the victim "tussling on the ground in front of the van." Snipes was standing up and the victim was on his knees with one arm wrapped around Snipes's legs and holding a pistol in his other hand. The two were fighting over the gun, but [the petitioner] did not know at that time to whom the gun belonged. He saw blood on Snipes's stomach and shorts, so he screamed. The victim looked at him, and, thinking the victim had shot Snipes, he shot the victim one time.

[The petitioner] and Snipes ran to the truck and drove Lujan back to their other friend's house. He did not call the police because he was scared and intoxicated. He also felt bad for shooting the victim after he learned that Snipes was not hurt. They continued to drive around "getting high" and then drove back by the scene at the victim's house. Two police cars were in the area and, when Snipes saw them, he made a sharp right turn and sped away. The police gave chase, but the pursuit ended when their vehicle

-3-

was hit by another car at a traffic signal. Snipes got out of the truck and ran, but [the petitioner] remained because he was intoxicated and felt that he had not done anything wrong. [The petitioner] denied using a weapon at any time during the pursuit.

[The petitioner] was arrested at the scene and taken to the police station. Because he was too intoxicated to give a statement that night, he was put on a hold and taken to a cell. The next morning, he was taken to the homicide office and eventually gave two statements, neither of which was entirely accurate, due to Sergeant Max's telling him that he would get the death penalty. Prior to giving the statements, he had twice requested an attorney. On cross-examination, [the petitioner] admitted that "[t]here's a chance" he yelled for the officers to return to the interview room after they left the first time.

After the conclusion of the proof, the jury convicted [the petitioner] of first degree felony murder, the lesser-included offense of second degree murder, aggravated burglary, and employing a firearm during the commission of a felony.

Id. at *5-7. On January 30, 2014, the petitioner filed a pro se petition for post-conviction relief alleging that he received ineffective assistance of counsel. The post-conviction court subsequently appointed counsel, who filed an amended petition on September 4, 2014. An evidentiary hearing was held on October 9, 2014.

**Post-Conviction Hearing.** Trial counsel, an Assistant Shelby County Public Defender for seven years, testified that he was assigned the petitioner's case in 2007. Counsel had previously tried two first degree murder cases and assisted in the prosecution of at least three others. Counsel recalled meeting with the petitioner and his family on several occasions to discuss potential witnesses and possible defenses. Through discovery, he received a statement from the petitioner's co-defendant Jesus Lujan, which reflected that Lujan was in the car when they arrived at the victim's house, but he remained in the car "with the radio blaring loudly" during the altercation between the victim and the petitioner. Because Lujan's statement reflected that he remained in the car during the incident, counsel decided not to send investigators to get an additional statement from Lujan or to call him as a witness at trial. When pressed on this point, counsel admitted that his primary defense at trial was voluntary intoxication and that he knew Lujan could testify to the petitioner's level of intoxication because Lujan had been with the petitioner during the hours preceding the altercation with the victim. Counsel believed that he had sufficient evidence of the petitioner's intoxication based on the petitioner's testimony of his extensive drug use prior to the altercation and the testimony

elicited on cross-examination from the arresting officer that, at the time of the arrest, the petitioner was too intoxicated to give a statement.

Trial counsel was also aware that three women were in the vehicle with the petitioner when he was arrested and had received their statements in discovery. Counsel made "a strategic choice" not to get follow-up statements or to call the women as witnesses at trial. Counsel met with the petitioner's sister, Madison Molina, on multiple occasions prior to trial, but did not recall whether she encouraged him to call Lujan as a witness. Counsel additionally made "a strategic choice" not to give a more detailed opening statement. He testified that he considered giving a more detailed opening statement, but determined that it was in the client's best interest to hear the State's proof first.

Madison Molina, the petitioner's sister, testified that she saw the petitioner in the late afternoon of the day prior to the shooting. When she saw the petitioner, "He was out of his mind. He was so intoxicated." After the petitioner's arrest, Molina visited Lujan in jail and learned that the petitioner had continued to take drugs through the night and into the following morning prior to the shooting. Lujan also told her that the petitioner never planned to rob anyone and that they just went to the victim's house to buy more marijuana. Molina relayed this information to trial counsel and told him that both she and Lujan would be willing to testify at trial. However, trial counsel told her that, "he just couldn't use [Lujan] in the case."

At the conclusion of the hearing, the post-conviction court took the matter under advisement and subsequently issued a written order denying relief on January 15, 2015. In the order, the court found that the petitioner failed to establish that trial counsel was deficient for failing to call Lujan as a witness at trial because the petitioner failed to present testimony from Lujan at the post-conviction hearing as required by Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The post-conviction court also determined that trial counsel made a strategic decision not to call the petitioner's sister and that it was in the petitioner's best interest. Regarding the three witnesses that were with the petitioner when he was arrested, the post-conviction court determined that trial counsel was not deficient for failing to interview them because he already had a copy of their statements to police and their testimony was not relevant to trial counsel's theory of the case. Finally, the post-conviction court determined that trial counsel gave an adequate opening statement that fell "well within the accepted standards for those practicing within the profession."

The petitioner filed a pro se notice of appeal on February 11, 2015, and on June 23, 2015, new counsel was appointed to represent him in this appeal.

## ANALYSIS

On appeal, the petitioner argues that trial counsel rendered ineffective assistance of counsel. Specifically, the petitioner contends that trial counsel was deficient for failing to: (1) call his sister, Madison Molina, as a witness at trial; (2) call a co-defendant, Jesus Lujan, as a witness at trial; (3) interview three potential witnesses who were with the petitioner when he was arrested; and (4) give a more detailed opening statement. Finally, though not raised previously, the petitioner claims that his conviction for employing a firearm during the commission of a dangerous felony is void because the State failed to specify the underlying felony in the indictment. The State responds that the post-conviction court properly denied relief because the petitioner failed to establish that he received ineffective assistance of counsel. The State further contends that the petitioner is not entitled to relief regarding the indictment because the State is not required to specify the predicate felony.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal citations and quotation marks omitted); see also Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Frazier v. State, 303 S.W.3d 674, 679 (Tenn. 2010). A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010); Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Vaughn, 202 S.W.3d at 116 (citing Baxter v. Rose,

523 S.W.2d 930, 936 (Tenn. 1975); Strickland v. Washington, 466 U.S. 668, 687 (1984)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. at 370 (quoting Strickland, 466 U.S. at 694).

**I. Ineffective Assistance of Counsel.** The petitioner argues that trial counsel was ineffective for failing to call Madison Molina and Jesus Lujan as witnesses at trial and for failing to investigate three women that were with the petitioner when he was arrested. The State argues that the petitioner cannot establish deficient performance or prejudice regarding Lujan or any of the women that were with the petitioner prior to his arrest because they did not testify at the post-conviction hearing. Regarding Molina, the State claims that the decision not to call her as a witness was a reasonable strategic decision by trial counsel.

The post-conviction court concluded, and we agree, that counsel was not ineffective for failing to call Molina at trial. Trial counsel's trial strategy was that the State could not prove the element of intent because the petitioner was too intoxicated at the time of the crime. In support of this theory, he presented testimony from the petitioner and one of the arresting officers that the petitioner was too intoxicated at the time of his arrest to give a statement. Trial counsel decided not to call Molina because he believed the testimony from the petitioner and the arresting officer was sufficient to warrant a jury instruction on intoxication. The post-conviction court credited the testimony of counsel and determined that trial counsel's decision was strategic and did not amount to deficient performance. The evidence does not preponderate against the finding of the post-conviction court. Accordingly, the petitioner is not entitled to relief on this issue.

The petitioner has also failed to establish that trial counsel rendered ineffective assistance by failing to call Lujan or the three women that were with the petitioner when he was arrested because the petitioner did not call them as witnesses at the post-

-7-

conviction hearing. See Black, 794 S.W.2d at 757 ("When a petitioner contends that trial counsel failed to . . . present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing . . . . this is the only way the petitioner can establish that . . . the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner."). Citing Tavarus U. Williams v. State, No. 02C01-9711-CR-00423, 1998 WL 742348 (Tenn. Crim. App., at Jackson, Oct. 23, 2009), the petitioner argues that the rule in Black is inapplicable because his sister testified at the post-conviction hearing regarding the substance of what Lujan would have testified to at trial.

In Tavarus Williams, this court determined that trial counsel's negligence prevented the petitioner from calling the missing witness at the post-conviction hearing and therefore reversed the post-conviction court's denial of relief. The court reasoned:

> We recognize that this witness' proposed testimony should have been produced at the post-conviction hearing under the general rule announced in Black v. State. However, we think it is fundamentally unfair to hold this failure of proof against [Williams] and, therefore, find the Black rule inapplicable under the facts of this case. . .
>
> The best evidence that [Williams] had of the crucial testimony was [the investigator], and he did produce that proof at the hearing. Accordingly, because [Williams] produced independent proof of vital testimony that would have been available at the hearing but for his trial lawyer's ineffectiveness (in never discovering the witness, not calling him and losing all record of him), we hold that [Williams] has established both prongs of the Strickland test.

Id. at *6-7 (internal citations, footnotes, and quotations omitted).

Tavarus Williams is distinguishable from the case at bar. First, the petitioner does not allege or present proof that he was unable to produce the prospective witnesses at the post-conviction hearing based on trial counsel's negligence. The petitioner offered no explanation for his failure to produce these witnesses at the hearing. Moreover, in contrast to Tavarus Williams, trial counsel knew of these potential witnesses through the course of his investigation, had received their statements during discovery, and made a strategic choice not to use them at trial. Accordingly, the circumstances of this case do not implicate the concerns of fundamental fairness espoused in Tavarus Williams. The petitioner is not entitled to relief on this issue.

Next, the petitioner claims that trial counsel was ineffective for failing to give a more detailed opening statement. Specifically, he contends that trial counsel should have made more of an effort to "advance the defense theory of the case." The State responds that the post-conviction court properly determined that trial counsel's opening statement was not deficient. We agree with the State.

The right to effective assistance of counsel extends to opening and closing arguments. Yarborough v. Gentry, 540 U.S. 1, 5-7 (2003); Bell v. Cone, 535 U.S. 685, 701-02 (2002). However, counsel has wide latitude in deciding how to best represent a client, and deference to counsel's tactical decisions in the opening statement or closing argument is particularly important. Kevin Lewis v. State, No. E2014-02070-CCA-R3-PC, 2015 WL 5175664, at *5 (Tenn. Crim. App. Sept. 3, 2015), perm. app. denied (Tenn. Dec. 11, 2015) (citing Torrez Talley v. State, No. W2009-02036-CCA-R3-PC, 2011 WL 1770485, at *4 (Tenn. Crim. App. May 9, 2011), perm. app. denied (Tenn. Sept. 21, 2011)).

We agree with the post-conviction court's determination that trial counsel was not ineffective for not making a more detailed opening statement. While trial counsel gave a relatively brief opening statement, he testified at the post-conviction hearing that the decision to do so was a strategic one. During his opening statement, trial counsel instructed the jury that the burden of producing proof of guilt beyond a reasonable doubt was on the State and asked the jurors to keep an open mind throughout the proceedings. As we have previously noted, this court will not second guess strategic decisions of trial counsel, including decisions regarding the length or content of the opening statement. See James Richard Bishop v. State, No. E2000-01725-CCA-R3-PC, 2001 WL 798065, at *9 (Tenn. Crim. App. July 13, 2001) (citing Aaron Jermaine Walker v. State, No. 03C01-9802-CR-00046, 1999 WL 39511 (Tenn. Crim. App., at Knoxville, Jan. 28, 1999), perm. app. denied (Tenn. July 12, 1999)) (noting that even the complete waiver of an opening statement "has been held to be a valid strategy decision, whether or not ultimately successful or even wise when viewed in hindsight"). The petitioner is not entitled to relief on this issue.

**II.  Validity of the Indictment.**  Finally, the petitioner challenges the sufficiency of count six of his indictment, which charges him with employing a firearm during the commission of dangerous felony. The petitioner claims for the first time on appeal that his firearm conviction should be vacated because he was deprived of adequate notice when the State failed to specify the underlying dangerous felony. The State responds that the issue is meritless because notice pleading requirements do not require the specific pleading of a predicate felony when a defendant is charged with employing a firearm during the commission of a dangerous felony.

As an initial matter, the petitioner concedes that this issue was not raised in his petition for post-conviction relief and is being argued for the first time on appeal. Normally, challenges to an indictment must be raised pre-trial; however, a defendant can challenge the indictment at any time while the case is pending when challenging the lack of subject matter jurisdiction in the court or when alleging that the indictment failed to charge an offense. See Tenn. R. Crim. P. 12(b)(2)(B); State v. Nixon, 977 S.W.2d 119, 120-21 (Tenn. 1997); Rogers v. State, No. E2015-00255-CCA-R3-PC, 2015 WL 4511551, at *3 (Tenn. Crim. App. July 27, 2015); State v. Alvin Brewer and Patrick Boyland, Nos. W2012-02281-CCA-R3-CD and W2012-02282-CCA-R3-CD, 2014 WL 1669807, at *26 (Tenn. Crim. App. Apr. 24, 2014) ("An allegation that an indictment does not charge an offense is . . . subject to plenary review even if not raised in the trial court."), perm. app. denied (Tenn. Sept. 18, 2014); State v. Willie Duncan, No. W2013-02554-CCA-R3-CD, 2014 WL 4243746, at *5 (Tenn. Crim. App. Aug. 27, 2014) (citing Alvin Brewer, 2014 WL 1669807, at *26), perm. app. granted (Tenn. Feb. 13, 2015); see also Dykes v. Compton, 978 S.W.2d 528, 529 (Tenn. 1998) (citations omitted) (holding that a defective indictment claim may be brought in a habeas corpus proceeding because "[a] valid indictment is an essential jurisdictional element, without which there can be no prosecution"). In addition, the State concedes that the petitioner may raise this issue for the first time on post-conviction review. Therefore, we will address the merits of the petitioner's arguments.

Pursuant to Code section 39-17-1324, it is an offense to employ a firearm during the commission or attempted commission of a dangerous felony. T.C.A. § 39-17-1324(b)(1), (2). The statute provides a list of eleven qualifying predicate felonies and requires that the underlying felony "be pled in a separate count of the indictment or presentment and tried before the same jury at the same time as the dangerous felony." Id. § 39-7-1324(d). However, the statute is silent on whether the predicate dangerous felony must be named in the count charging a violation of Code section 39-17-1324. Willie Duncan, 2014 WL 4243746, at *6.

The United States Constitution and the Tennessee Constitution state that a defendant is entitled to knowledge of "the nature and cause of the accusation." U.S. Const. amend. VI; Tennessee Const. art. I, § 9. The Tennessee Supreme Court has stated that an indictment is valid if it contains sufficient information "(1) to enable the accused to know the accusation to which answer is required, (2) to furnish the court adequate basis for the entry of a proper judgment, and (3) to protect the accused from double jeopardy." State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997) (citing State v. Byrd, 820 S.W.2d 739, 741 (Tenn. 1991); VanArsdall v. State, 919 S.W.2d 626, 630 (Tenn. Crim. App. 1995); State v. Smith, 612 S.W.2d 493, 497 (Tenn. Crim. App. 1980)). In addition, pursuant to Tennessee Code Annotated section 40-13-202, the indictment must

state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner so as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment. . . .

T.C.A. § 40-13-202; see also State v. Hammonds, 30 S.W.3d 294, 300 (Tenn. 2000) (citing State v. Hill, 954 S.W.2d at 727) (stating that "achiev[ing] the overriding purpose of [providing] notice to the accused will be considered sufficient to satisfy both constitutional and statutory requirements.")). A challenge to the sufficiency of an indictment presents a question of law which we review de novo. State v. Wilson, 31 S.W.3d 189, 191 (Tenn. 2000).

As it relates to Tennessee Code Annotated section 39-17-1324, generally an indictment "that does not name the underlying dangerous felony does not provide the defendant with adequate notice of the crime charged," because there are eleven qualifying dangerous felonies listed in the statute, and the failure to specify one "leaves the defendant with inadequate notice of the charges against him." State v. Demeko Gerard Duckworth, No. M2012-01234-CCA-R3-CD, 2013 WL 1933085, at *21 (Tenn. Crim. App. May 10, 2013), perm. app. denied (Tenn. Oct. 17, 2013); T.C.A. § 39-17-1324(h)(2)(i)(1). However, if each count of the indictment, read together, leaves the defendant "reasonably certain of the predicate felony underlying a conviction for employing a firearm during the commission of a dangerous felony," the indictment is valid. Willie Duncan, 2014 WL 4243746, at *7 (citing Alvin Brewer, 2014 WL 1669807, at *30).

Despite the failure to specify the underlying predicate felony in the indictment, the indictment is not void for lack of notice because only one qualifying predicate felony was charged. Under these circumstances, this court has consistently held that the indictment served its "overriding purpose" of providing notice to the defendant. See State v. Narrell Christopher Pierce, No. M2014-00120-CCA-R3-CD, 2015 WL 2102003, at *15 (May 5, 2014) ("where the indictment . . . includes only one count that qualifies as a dangerous felony under section 39-17-1324, the indictment is not void for lack of notice."), perm. app. denied (Tenn. Aug. 13, 2015); see also State v. Rhakim Martin, No. W2013-02013-CCA-R3-CD, 2015 WL 555470, at *7-8 (Tenn. Crim. App. Feb. 10, 2015) (holding that although dangerous felony was not specified in the indictment, defendant was provided adequate notice when the remaining counts charge only one dangerous felony specified in section 39-17-1324), perm. app. granted (Tenn. May 15, 2015); State v. Christopher Swift and Marquavious Houston, No. W2013-00842-CCA-R3-CD, 2015 WL 2128782, at *18 (Tenn. Crim. App. May 5, 2015) (failure to specify the predicate felony did not void indictment where only other indicted offense "qualified as a dangerous felony pursuant to

-11-

Tennessee Code Annotated section 39-17-1324(i)(1)"); <u>State v. Zachary Carlisle</u>, No. W2012-00291-CCA-MR3-CD, 2013 WL 5561480, at *16 (Tenn. Crim. App. Oct. 7, 2013) ("Voluntary manslaughter is listed as a 'dangerous felony in . . . section 39-17-1324(i)(1), and was the only other offense charged in the indictment . . . the indictment provided the Defendant with adequate notice of the dangerous felony he was charged with committing while employing a firearm."), <u>perm. app. denied</u> (Tenn. Mar. 17, 2014); <u>Demeko Gerard Duckworth</u>, 2013 WL 1933085, at *22 (indictment not void for lack of notice because it was "reasonably clear" that the firearm charge was related to the only dangerous felony listed in section 39-17-1324 charged in the indictment); <u>cf. Willie Duncan</u>, 2014 WL 4243746, at *9 (concluding that an indictment for employing a firearm during the commission of a dangerous felony without specifying the predicate felony failed to provide adequate notice where the defendant was charged with multiple qualifying dangerous felonies).

We find this reasoning to be persuasive and likewise hold that the indictment in this case is not void for lack of notice. Because aggravated burglary was the only qualifying predicate felony charged in the indictment, it was "reasonably clear" that the firearm charge in this case was related to the aggravated burglary charge. <u>See</u> T.C.A. § 39-17-1324(i)(1)(H). Accordingly, the petitioner is not entitled to relief on this issue.

## <u>CONCLUSION</u>

Based on the forgoing authority and analysis, the judgments of the post-conviction court are affirmed.

_____
CAMILLE R. McMULLEN, JUDGE