IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 10, 2018

**DENNIS EVANS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
No. 11-02186      Paula Skahan, Judge
_____

**No. W2017-01619-CCA-R3-PC**
_____

The Petitioner, Dennis Evans, appeals the denial of his petition for post-conviction relief. He argues (1) his conviction in Count 2 for possession of a firearm during the commission of a dangerous felony violated the prohibition against double jeopardy; (2) that he is entitled to retroactive application of State v. Angela Ayers, No. W2014-00781-CCA-R3-CD, 2016 WL 7212576 (Tenn. Crim. App. Dec. 13, 2016) ("Ayers II"), which requires this court to reverse and vacate his firearm conviction and dismiss Count 2 for lack of adequate notice; and (3) defense counsel provided ineffective assistance by advising him to accept the plea agreement offered by the State. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Kirk W. Stewart, Memphis, Tennessee, for the Petitioner, Dennis Evans.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Amy P. Weirich, District Attorney General; and Theresa McCusker, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Factual Background and Procedural History.** In April 2011, the Shelby County Grand Jury indicted the Petitioner in Count 1 for first degree premeditated murder and in Count 2 for employment of a firearm during the commission of a dangerous felony. On July 25, 2014, a jury convicted the Petitioner of the first degree murder charge, and the trial court sentenced him to life imprisonment. At the same time, the trial court entered a "directed verdict" of "not guilty" on the firearm count.

Thereafter, the defense filed a Motion to Set Aside Verdict pursuant to Tennessee Rule of Criminal Procedure 29.[1]

At the October 1, 2014 hearing on the Petitioner's Rule 29 motion, defense counsel argued that the State failed to present any proof establishing a period of reflection and deliberation, which was required to support a guilty verdict for first degree premeditated murder. After listening to arguments from both the defense and the State, the trial court set aside the verdict for first degree premeditated murder, stating:

> I know when the jurors came in with their verdict of guilty murder first degree, I was stunned. I have been thinking about this a lot since that time.
>
> I disagreed with the verdict at that time and I continue to disagree with the verdict. I do not believe the proof in the case supported murder in the first degree, and I'm going to refer this back for a new trial.
>
> . . . .
>
> . . . I'm setting aside the verdict[.]

On October 7, 2014, the trial court entered a written order setting aside the verdict as thirteenth juror and granting a new trial pursuant to Tennessee Rule of Criminal Procedure 33(d). In this order, the court made the following findings:

> Defendant, Dennis Evans, requests for this Court to set aside his First Degree Murder conviction pursuant to Rule 29 of the Tennessee Rules of Criminal Procedure[,] arguing that the evidence was insufficient to sustain a conviction of First Degree Murder. This Court, however, chooses to set aside the conviction for First Degree Murder, pursuant to Rule 33(d) of the Tennessee Rules of Criminal Procedure[,] finding instead that the Court disagrees with the jury about the weight of the evidence. This Court does not find that the weight of evidence supported a conviction for First Degree Murder and therefore sets aside the conviction and the Prosecution starts over from the Indictment.

On February 12, 2015, the Petitioner filed a Petition for Waiver of Trial and Request for Acceptance of Plea of Guilty. At the plea submission hearing the same day,

---

[1] The Rule 29 motion is not included in the appellate record, although the trial court's order ruling on this motion was made a part of the record.

the State summarized the facts supporting the Petitioner's guilty plea, explaining that on September 1, 2010, police officers responded to a shooting at an apartment complex located at 3155 Sharpe Avenue. Upon their arrival, officers found the victim, Jeremy Shelton, who had sustained several gunshot wounds to his back. Although the victim was transported to the hospital, he died from his gunshot wounds a short time later. The State asserted that the Petitioner had been identified as the individual responsible for shooting the victim and that the shooting had occurred during an argument over a drug transaction that had taken place at the apartment complex. Following the State's recitation of these facts, defense counsel stipulated that there was a factual basis for the Petitioner's guilty plea.

During this plea submission hearing, defense counsel stated that because the Petitioner had been previously tried for these offenses, he was "well aware of his rights to trial." Counsel said that the Petitioner was "completely lucid" and knew "exactly what he [wa]s doing" regarding his guilty plea. He added that he and the Petitioner had "a substantial amount of time" to discuss the plea and that "this [was] an outcome that [the Petitioner] desire[d]" and one that they had "worked hard to achieve." He added that the Petitioner had "consulted with his family over the last two months about [the plea]" and was entering it with "a sound mind."

During the hearing, the Petitioner testified that he had finished three years of college and that defense counsel had informed him of his rights. He said he understood that he had a right to a jury trial, to cross-examine the State's witnesses, to subpoena and present witnesses in his own behalf, to testify, and to remain silent. He also understood that if he proceeded to trial and was convicted, he could appeal but that he had no right to appeal from a guilty plea. He stated that he understood what the State would have to prove at trial in order to obtain convictions on the charged offenses. The Petitioner said he wished to waive all of his rights and enter a guilty plea in this case.

The trial court then detailed the sentences the Petitioner would face if convicted at trial. Although the Petitioner initially said he did not understand the court's statements regarding his potential sentences, defense counsel explained these potential sentences again, and the Petitioner stated that he understood. The trial court stated that although the Petitioner could not be convicted of employment of a firearm during the commission of a dangerous felony if convicted at trial of first or second degree murder, he could be convicted of the firearm offense if convicted of voluntary manslaughter. The Petitioner acknowledged that if convicted of the employment of a firearm offense, he would be required to serve a consecutive, ten-year sentence at 100%.

The Petitioner said he understood that he was pleading guilty to felonies that could be used to enhance any sentences he might receive for future convictions. He confirmed

that no one had forced or pressured him to plead guilty and that he was satisfied with defense counsel's performance. After reviewing the sentences outlined in the plea agreement, the trial court informed the Petitioner that he was receiving consecutive sentences of three years at 100% for the conviction for possession of a firearm during the commission of a dangerous felony and six years at 35% for the voluntary manslaughter conviction, for which he would be eligible for parole, and that both of these sentences would be served consecutively to his sentence in case number 10-01087. The court noted that the Petitioner would be eligible to petition for the suspension of his six-year sentence upon completion of his three-year sentence. It determined that the Petitioner's guilty plea was "freely, knowingly, voluntarily, [and] intelligently" entered and accepted the Petitioner's plea to the lesser included offenses of voluntary manslaughter and possession of a firearm during the commission of a dangerous felony. The "special conditions" box on both judgment forms indicated that the Petitioner was to serve his three-year sentence for the possession of a firearm conviction first and upon completion of this sentence, the Petitioner could petition the trial court to suspend his six-year sentence for his voluntary manslaughter conviction.

**Post-Conviction.** On December 11, 2015, the Petitioner filed a pro se petition for post-conviction relief, alleging that his guilty plea was involuntary, unknowing, and unintelligent; that his conviction violated double jeopardy protections; that he received ineffective assistance of counsel, and that the indictment charging him with employment of a firearm during the commission of a dangerous felony was void on its face because first degree murder was not one of the enumerated dangerous felony offenses.

Following the appointment of counsel, the Petitioner filed two amended petitions for post-conviction relief. Interestingly, the first amended post-conviction petition did not incorporate the allegations raised in the Petitioner's pro se petition and only argued that counsel was ineffective in failing to pursue the legal insufficiency of the indictment, in failing to advise him that the firearm count of the indictment was legally defective prior to convincing him to accept the State's plea offer, and in failing to adequately investigate, research, or advise the Petitioner regarding whether double jeopardy principles supplied him with a basis to reject the State's offer requiring him to enter a guilty plea to the firearm charge. Just over two months later, the Petitioner filed a second amended post-conviction petition, which also failed to incorporate the allegations raised in the pro se petition and the first amended petition. In this second post-conviction petition, the Petitioner reiterated the same allegations he made in the first amended post-conviction petition but added a single case, State v. Thompson, 285 S.W.3d 840 (Tenn. 2008), to support his claim that counsel provided ineffective assistance in failing to adequately investigate, research, or advise the Petitioner regarding the double jeopardy issue.

- 4 -

At the August 19, 2016 post-conviction hearing, the Petitioner testified that he was indicted for first degree murder and employment of a firearm during the commission of a dangerous felony. He said that during his July 2014 trial on these charges, the jury returned a verdict of guilty for the first degree murder charge, although he admitted that he "didn't know" whether the jury also returned a verdict of guilty on the firearm charge. The Petitioner stated that the trial court ultimately set aside the verdict from trial, and at some later point in time, defense counsel asked him whether he would consider accepting a plea bargain on these charges. Shortly thereafter, he entered a guilty plea to the lesser included offenses of voluntary manslaughter and possession of a firearm during the commission of a dangerous felony.

The Petitioner claimed that his indictment did not properly charge him with the employment of a firearm offense because the State never named an underlying dangerous felony, which left him with inadequate notice as to the charges in his indictment. He asserted that defense counsel never explained that the State was required to charge a predicate dangerous felony for the employment of a firearm charge. He also maintained that, pursuant to Ayers II and State v. Eric Williams, No. W2013-01593-CCA-R3-CD, 2015 WL 1453389 (Tenn. Crim. App. Mar. 27, 2015), the State could not indict an individual on the employment of a firearm charge without also charging him with an underlying dangerous felony. He said he first became aware that his indictment was defective after the trial court set aside the verdict in his case and around the time that the State offered him the plea agreement. At that time, he informed defense counsel that he did not believe he should enter a guilty plea to the firearm charge. The Petitioner said he realized the problems with his indictment when another inmate informed him that defense counsel, who had also represented this inmate, had gotten the inmate's firearm charge set aside prior to trial. The Petitioner claimed that although defense counsel filed pretrial motions in his case, he never challenged the validity of his indictment and never raised any issues regarding the State's failure to charge a predicate dangerous felony. However, the Petitioner admitted that he had auditory problems, which made it difficult to hear everything that took place in court. The Petitioner eventually acknowledged that defense counsel had argued that the jury should not be instructed on the firearm charge in conjunction with the first degree murder charge.

The Petitioner asserted that after the trial court set aside the verdict in his case, defense counsel informed him that absent a plea agreement, the State would retry him on the "first degree murder and the gun charge." At the time, the Petitioner insisted that his indictment was void and that double jeopardy barred his retrial on the employment of a firearm charge. Despite this, defense counsel rejected his assessment of the situation and maintained that the State would retry him on both the first degree murder charge and the firearm charge. The Petitioner said that defense counsel was so persuasive on this issue

- 5 -

that he decided to enter his guilty plea to voluntary manslaughter and possession of a firearm during the commission of a dangerous felony.

The Petitioner said he was unaware that the cases of Ayers II and Eric Williams, upon which he relied in concluding that his indictment was void, were both decided after his trial and after entry of his guilty plea. He admitted that if he had not entered his guilty plea to both counts, he would have proceeded to trial on the first degree murder charge a second time, where he would have faced a substantially longer sentence than the one he received in his plea agreement. The Petitioner acknowledged not only that a jury had previously convicted him of the first degree murder charge, but also that the total sentence he received under the plea agreement was substantially less than life imprisonment or any sentence he would have received if convicted of second degree murder. When asked if this greatly reduced sentence affected his decision to accept the plea agreement, the Petitioner replied, "Of course it factored into my decision . . . because hey, who want[s] to be locked up for life?" The Petitioner admitted that the risk of receiving a sentence of life imprisonment was what convinced him to accept the plea agreement.

On September 16, 2016, during the continuation of the post-conviction hearing, defense counsel testified that he had practiced law for eleven years and that most of his practice consisted of criminal defense. He said that he had represented the Petitioner at trial, where the jury had returned a verdict of guilty for first degree premeditated murder in Count 1 and that "pursuant to the jury instructions this was an acquittal for count two [charging the Petitioner with employment of a firearm during the commission of a dangerous felony] because first degree premeditated murder [was] not listed as an enumerated dangerous felony under [Code] section 39-17-1324." Defense counsel said that the Petitioner's case was the only time he had filed a written motion pursuant to Rule 29 asking the trial court to set aside the verdict on the basis that the evidence of premeditation was insufficient to support the verdict. He said that upon entertaining this motion, the trial court did not grant the Rule 29 motion but did set aside the verdict pursuant to Rule 33 on the ground that the court disagreed with the jury about the weight of the evidence. Defense counsel said that after researching the basis for the court's ruling, he concluded that "we went back to being pretrial[,] post-indictment." He specifically recalled that "the difficulty in terms of trying to go forward, whether to plea bargain or go back to trial, was the status of count two." Defense counsel said that the issue was whether the trial court "had reinstated [Count 2] or could reinstate [Count 2] based on the jury's acquittal[.]" He said that at that moment in time, the Petitioner had two options—he could enter a plea agreement on Count 1 and Count 2 or he could litigate the issues regarding Count 2 and face a life sentence on retrial. Defense counsel said he met with the Petitioner around ten times to discuss these two options.

Defense counsel added that prior to trial, he retained a psychiatrist and a psychologist, who evaluated the Petitioner and who were prepared to testify that although the Petitioner was legally competent to stand trial, he was incapable of forming the requisite intent of premeditation and deliberation required for first degree premeditated murder. Defense counsel said that at trial he made the "strategic decision to go all in on self-defense with the advice of my co-counsel, which frankly I regret now."

He added that after the trial court entered a "directed verdict" as to Count 2 and set aside the jury's verdict of guilty in Count 1, there were complex legal issues regarding the status of the charge in Count 2:

> [Some of the issues were t]he applicability of whether or not count two had even been reinstated. The ability of count two to even attach to count one, which was not an enumerated dangerous felony, all of these were pretty technical legal issues that [were] hard for most lawyers to understand and so there was a significant difficulty in communication with [the Petitioner] in asking any layperson[,] but one with cognitive deficits[,] to understand pretty complicated legal theories.

Counsel said that before the Petitioner's trial, the State had offered a plea agreement of ten years for the Petitioner's guilty plea to voluntary manslaughter and ten years for the Petitioner's guilty plea to the firearm charge. Following the Petitioner's trial, the State offered consecutive sentences of six years for the voluntary manslaughter conviction and three years at 100% for the possession of a firearm conviction. Defense counsel discussed the nine-year offer with both the Petitioner and the State and specifically debated "whether or not [Count 2] was still a legal charge or whether that still existed or whether it was potentially void." He said the State's position was that if the Petitioner wanted to litigate these issues pretrial or through an interlocutory appeal, then the State would withdraw the plea agreement and would transfer the case to another division for a trial on first degree murder, "which was the State's right under Rule 33 based on the court's ruling."

Defense counsel stated, "[M]y advice frankly to [the Petitioner was] take [the offer] and reduce your life sentence to nine years[,] and you can still probably have standing to challenge the legality of the plea in Count 2 on post-conviction because it's a question of if it's just facially constitutional." He said that although the Petitioner initially had difficulty understanding these legal issues, he ultimately understood his options and took defense counsel's advice to accept the plea agreement with the intent of raising these issues on post-conviction. Defense counsel acknowledged that in the year following entry of the plea there might "have been a day on the phone where [the Petitioner] called me with the benefit of . . . a jailhouse lawyer and seemed . . . to

- 7 -

understand or verbalized for the first time his concern about whether double jeopardy attached in count 2."

Defense counsel explained why he advised the Petitioner to accept the plea agreement rather than face a sentence of life imprisonment at trial:

> I can say that the verdict in this case was one of the most devastating moments of my legal career. I certainly thought we'd won. I certainly thought the victim was an incredibly unsympathetic bully who beat up on people in an old folks home, including [the Petitioner]. And I learned a great deal about how I probably picked the wrong jury in this case. And the fact that the jury convicted him was a shock I think to a lot of people in the courtroom. Your co-counsel started crying at the verdict. The court reporter was so angry that she printed the transcripts in about five days so that I would have them for the motion for new trial, that's never happened. And that was just such a shock.
>
> But, you know, not wanting to go through that again and I think maybe I didn't have the best grasp on the evidence as I thought. I certainly didn't think it would ever get overturned on a motion for new trial and I thought that we had, you know, a blessing that we shouldn't do away with and that the second offer after trial was less than half the time that his offer was before trial.

Counsel noted that because the Petitioner was in his early sixties at the time the State made the nine-year offer, accepting the offer "seemed to be his best chance at ever having freedom.

Defense counsel admitted that since 2011, he had been one of the more "prominent critics" of Code section 39-17-1324 among the members of the Tennessee defense bar. He said he had made motions challenging Code section 39-17-1324 in other criminal cases and was surprised to learn that he had not raised the issue regarding the firearm charge prior to the Petitioner's trial. Defense counsel said the voir dire transcript from the Petitioner's trial showed that he argued the jury should not be "even informed about count two until and unless they come [sic] back with a verdict that was an enumerated dangerous felon[y]." He said that while he objected to the coordinate reading of the firearm charge in front of the jury during voir dire, he never made an oral or written motion challenging the "legality, propriety or sufficiency of even indicting on count two with only first degree murder, which is not an enumerated dangerous felony."

Defense counsel said he and another attorney discussed the problems with Code section 39-17-1324, and this other attorney incorporated several of defense counsel's arguments on this issue into his appellate argument in State v. Angela Ayers, No. W2014-00781-CCA-R3-CD, 2015 WL 4366633 (Tenn. Crim. App. July 16, 2015) ("Ayers I"), perm. app. granted, case remanded (Tenn. Oct. 24, 2016).[2] Defense counsel admitted that although he understood the arguments attacking the validity of Code section 39-17-1324 at the time of the Petitioner's first trial and at the time the verdict in this case was set aside, he failed to make these arguments in the Petitioner's case. Nevertheless, he insisted that he did tell the Petitioner after the verdict had been set aside that "count two [was] not even a proper count" and that there was "a whole question of pre-errors about whether it could be charged at all or whether it could be charged and attached." Defense counsel stated that he had been unsuccessful in making the "pre-errors" argument related to Code section 39-17-1324 in approximately twelve other cases. He said, "[I]f I had the ability to take a life sentence down to nine years or gamble it all on an argument that never had been successful, I was going with the first option[.]" He added that the only time that he had been successful with the "pre-errors" argument in attacking an indictment that charged first degree murder and the firearm count was in a different division of criminal court where his argument made the prosecutor nervous enough to offer a plea to voluntary manslaughter. However, he said that at the time of the Petitioner's plea, no judge in his cases had ruled it was improper to charge first degree murder and employment or possession of a firearm. Defense counsel said that when he raised this issue with the prosecutor in the Petitioner's case, the prosecutor informed him that if the Petitioner wanted to litigate that issue, then he would have to do so upon retrial.

When asked if he ever considered making a double jeopardy argument regarding Count 2, defense counsel said he spent less time researching double jeopardy law and more time researching Rule 33(d), which mandated that "if the judge sets aside the verdict, it all comes back." He added,

> I wish I could say that I read more about the double jeopardy aspect [of this issue] but I can't say that's my memory. My memory is much more clear about double jeopardy [from] speaking with [the Petitioner] on the phone from the penitentiary but . . . we definitely looked into whether count two came back after the jury's verdict and after the judge's ruling. But probably the majority of the discussion with [the Petitioner] was just about

---

[2]On October 14, 2016, the Tennessee Supreme Court decided State v. Duncan, 505 S.W.3d 480 (Tenn. 2016), wherein it abrogated Ayers I and held that the State was permitted to establish the employment of a firearm offense by proving any of the possible predicate dangerous felonies charged in the indictment. Ten days later, the court remanded Ayers I to this court for reconsideration in light of the Duncan case.

the legality and viability of count two at all, . . . in its standing alone regardless of the verdict and the Court's ruling.

Defense counsel said that he did more research on Rule 29 than Rule 33 and that "double jeopardy ha[d] become one of those rights like the Fourth Amendment where there's thirty exceptions to it and there is no right left." He explained that it was his understanding that the Petitioner's case "would not be presented again to a grand jury" and that the case would "be transferred to another division of court and [would] proceed again under the same indictment."

Defense counsel said that if he had made a motion attacking Count 2 of the indictment on the grounds previously discussed, this would not have given him any leverage with the plea agreement because he "threatened to do that or argued that I was going to do that and the State was unmoved." He said it was his belief that the Petitioner had received a favorable plea agreement, which was why he advised him to accept it.

Defense counsel stated that the Ayers I case was decided in 2015, which was after the Petitioner entered his guilty plea in this case. He acknowledged that he did not make any arguments pretrial to the trial court about the firearm charge but explained that he probably decided that this argument would not have been successful given that he had lost the same types of arguments in several unrelated cases. Nevertheless, defense counsel reiterated that he orally argued during voir dire that Count 2 should not be read to the jury unless the jury came back with a guilty verdict for the proper predicate felony in Count 1. He also noted that a successful challenge to the firearm charge would have still left the murder charge as a triable offense for the State. Counsel maintained that even if he had been able to eliminate Count 2, the Petitioner still could have been convicted of first degree murder, just as he was at trial. He said that the Petitioner's offer before trial was ten years for the voluntary manslaughter charge and ten years for the firearm charge; he acknowledged that if he had been able to eliminate Count 2, the Petitioner might have received the same amount of time in Count 1 but would have been allowed to serve it at a lower percentage because the firearm charge was required to be served at 100%. Defense counsel said the State never made an offer of settlement without the firearm charge before or after trial.

On February 3, 2017, the Petitioner filed a memorandum of law[3] in support of his amended post-conviction petitions. In it, he requested that the trial court set aside only the portion of his guilty plea related to the firearm conviction. After summarizing the

---

[3] Although post-conviction counsel attached several exhibits to this memorandum, these exhibits were not included as a part of the memorandum in the appellate record, although some of these exhibits appeared in other parts of the record.

- 10 -

factual and procedural background of the case, the Petitioner asserted the following at the beginning of his "Law and Argument" section:

> The Petition before this Court poses essentially one overarching question: Did Defense Counsel's efforts on Petitioner's behalf from trial to guilty plea amount to the effective assistance of counsel? The answer to that overarching question, however, depends on a series of logically-related, ancillary propositions. In essence, Petitioner argues below that i) the Count of the original Indictment charging him with the possession of a firearm in the commission of a dangerous felony was void on its face; ii) that double jeopardy principles attached to prevent Petitioner's retrial on both the firearm charge and the charge of first degree murder; and iii) that, consequently, Defense Counsel's choice not to challenge the reassertion of those charges against the Petitioner, but instead to advise Petitioner to plead guilty to the gun charge notwithstanding those considerations, amounted to the ineffective assistance of counsel.

In the conclusion section of this memorandum, the Petitioner requested that the post-conviction court "hold that Defense Counsel tendered ineffective assistance to Petitioner, and that Petitioner's sentence as to Count 2 of the Indictment only be set aside and held for naught."

On March 30, 2017, the post-conviction court heard arguments from post-conviction counsel and the State. Post-conviction counsel argued that defense counsel's failure to advise the Petitioner that the State could not use the threat of re-prosecution on the first degree murder charge to induce his plea to the firearm charge, which was inadequately asserted in the indictment pursuant to Ayers I and Ayers II, amounted to ineffective assistance of counsel and made his guilty plea unknowing and involuntary. The State countered that there was no way defense counsel could have known how the Tennessee Court of Criminal Appeals would rule on this issue because Ayers I and Ayers II were decided after the Petitioner's trial and after entry of the Petitioner's guilty plea. The State also asserted that, despite the defense's claims to the contrary, the Petitioner could be tried for first degree murder following entry of the trial court's October 7, 2014 order setting aside the verdict and granting a new trial. Finally, the State argued that while the Petitioner could have litigated the defective charge and double jeopardy claims, if this litigation ended unfavorably, the Petitioner still would have been facing a life sentence for the first degree murder charge or a twenty-five to forty-year sentence for second degree murder rather than the six-year sentence for voluntary manslaughter and the three-year sentence for the firearm charge pursuant to his guilty plea. Based on this reasoning, the State argued that the Petitioner had failed to establish that defense counsel had provided deficient performance or that counsel's

alleged deficiencies had prejudiced the Petitioner's case. Post-conviction counsel countered that defense counsel had made arguments consistent with Ayers I and Ayers II long before these cases were decided and had been successful in receiving a favorable plea in an unrelated Shelby County case by making these types of arguments.

On July 28, 2017, the post-conviction court entered a written order denying post-conviction relief, which included the following findings of fact and conclusions of law:

### Indictment

Petitioner asserts that Count 2, employing a firearm during a felony, of the indictment used at trial was incomplete because it failed to enumerate a dangerous underlying felony[,] thereby rendering the indictment legally defective. (Evid. Hr'g 11-13 (Aug. 19, 2016)). Petitioner claims that he raised the potential defect with his trial counsel but was virtually ignored and his concerns were dismissed. (Id.) Petitioner supports his argument with the decision from State v. Ayers[,] which promulgates that if an indictment charges a defendant with employing a firearm during a dangerous felony that it must also be accompanied with at least one of the statutorily enumerated dangerous felonies. State v. Ayers, No. W2014-00781-CCA-R3-CD, 2016 WL 7212576, at *11 (Tenn. Ct. Crim. App. Dec. 13, 2016) ("Ayers II"). Petitioner claims to have brought the Ayers II decision to the attention of his trial counsel and uses it as the foundation for arguing his indictment was void in his petition. (2d Amend. Pet. for PCR at *7; Evid. Hr'g 13 (Aug. 19, 2016)).

Although the decision in Ayers II would appear to invalidate Petitioner's indictment as he argues, an underlying issue renders the case inapplicable to Petitioner's. According to the record, Petitioner[] was indicted on April 5, 2011, convicted on July 25, 2014, and entered a guilty plea on February 12, 2015. Ayers II was decided on December 13, 2016, and its predecessor Ayers I was decided on July 16, 2015. See Ayers II, 2016 WL 7212576 (Tenn. Ct. Crim. App. Dec. 13, 2016); [s]ee also State v. Ayers, No. W2014-00781-CCA-R3-CD, 2015 WL 4366633 (Tenn. Ct. Crim. App. July 16, 2015) ("Ayers I"). Trial counsel would have had no knowledge of the outcome of State v. Ayers at the time Petitioner was on trial, and therefore showed no deficient performance for not raising issue with Count 2 of the indictment. Furthermore, trial counsel stated that he made a tactical decision to not challenge and litigate Count 2 of the indictment because at the time of Petitioner's trial there had been no

- 12 -

successful challenges to similar counts in other cases; trial counsel was 0 for 12 in his previous attempts. (Evid. Hr'g 26 (Sept. 16, 2016)).

**Assistance of Counsel—Double Jeopardy and Plea**

The Petitioner asserts that because the trial judge entered a directed verdict of not guilty on Count 2, employment of a firearm during a dangerous felony, that Petitioner's constitutional right against double jeopardy was violated because the negotiated plea agreement contained the same firearms charge as Count 2 in the original indictment. (2d Amend. Pet. for PCR at *10). Additionally, Petitioner claims that he entered a guilty plea unknowingly and involuntarily due to trial counsel's failure to inform and educate Petitioner on the situation and consequences of his decisions. (Id. at 8-9).

Petitioner asserts an ineffective assistance of counsel issue relating to double jeopardy arose because trial counsel advised Petitioner to enter a guilty plea to Count 2 despite the trial court's apparent disposition of the count at the time of sentencing. (Id.) The record shows that the trial judge entered a directed verdict on Count 2 in reference to Petitioner's sentencing for the guilty jury verdict on Count 1, first degree murder. (Trial Tr. at 402). The trial judge, however, later granted Petitioner's Motion for New Trial pursuant to Tenn. R. Crim. P. 33(d), which allows for retrial of a defendant as he or she was indicted. See State v. Newton, No. M2013-00463-CCA-R3-CD, LEXIS *408 (Tenn. Ct. Crim. App. Apr. 29, 2014). Although Petitioner motioned for a new trial pursuant to Tenn. R. Crim. P. 29, the trial court granted Petitioner's motion under Rule 33(d)[,] which triggers different procedures than Rule 29. See State v. Gillon, 15 S.W.3d 492, 501 (Tenn. Crim. App. 1997) (citing State v. Dankworth, 919 S.W.2d 52, 56 (Tenn. Crim. App. 1995) (explaining the distinction between the use of Tenn. R. Crim. P. 33(d) and 29; the state may not retry under Rule 29). Trial counsel admitted a potential constitutional issue was present regarding the retrial of Count 2, but advised Petitioner that the issue had yet to be successfully challenged and the prosecution was unwilling to offer a plea agreement without including Count 2. (Evid. Hr'g 15 and 21 (Sept. 16, 2016)). In essence, trial counsel advised Petitioner to accept the State's plea offer because, under the law at the time, there was no guarantee Count 2 could be successfully challenged.

Trial counsel stated that his negotiations with the prosecution regarding a potential plea agreement and Count 2 were futile because the

prosecution refused to settle the case without including the firearms charge from Count 2. (Evid. Hr'g 15 (Sept. 16, 2016). Based on his previous lack of success challenging similar counts, trial counsel subsequently advised Petitioner to accept the prosecution's plea offer instead of risking a higher sentence in a new trial. (Id. at 15 and 29). Trial counsel's actions were clearly a tactical decision to advise his client to enter a plea agreement rather than risk either a higher sentence at a new trial or risk the potential for extended additional litigation.

Additionally, Petitioner claims that trial counsel was dismissive toward[] Petitioner regarding the potential double jeopardy of Count 2 issue and that Petitioner did not fully understand the consequences of entering into the plea agreement due to a lack of advice from trial counsel. (Evid. Hr'g 19-21 (Aug. 19, 2016)). Petitioner asserts that he only met with trial counsel a handful of times prior to entering the plea agreement, and uses this assertion to argue trial counsel was dismissive in nature and failed to adequately inform Petitioner. (Id. at 19) Trial counsel, however, stated that he met with Petitioner at least ten (10) times before the Motion for New Trial was decided and the plea agreement was entered, including at least one meeting with Petitioner and his family, to discuss options and potential outcomes. (Evid. Hr'g 12 (Sept. 16, 2016)). Furthermore, trial counsel admitted that explaining the complex legal theories at play to Petitioner proved difficult, but that he retained two medical professionals to testify that, although Petitioner was mentally impaired, Petitioner was nonetheless legally competent and able to understand the situation. (Id.). Moreover, Petitioner admitted that only serving nine (9) years['] confinement, opposed to a potential life sentence, factored into Petitioner's decision to ultimately enter the plea agreement despite his concerns regarding Count 2. (Evid. Hr'g 31 (Aug. 19,. 2016)). Although Petitioner may have possessed concerns regarding the legality of Count 2, he ultimately made a rational, educated, and volitional decision to enter into the negotiated plea agreement rather than face a potential[ly] harsher sentence at a new trial. Trial counsel's advice to Petitioner regarding the plea agreement appears to be a tactical advice based on his investigation of and experience with the law at issue. Trial counsel's actions in representing Petitioner do not, therefore, appear to have fallen below the professional norm articulated in Grindstaff, 297 S.W.3d 208.

At the end of this order, the post-conviction court concluded that the "Petitioner ha[d] failed to prove by clear and convincing evidence that he was prejudiced by trial counsel's

alleged ineffective assistance." Following entry of this written order, the Petitioner filed a timely notice of appeal.

## ANALYSIS

**I. Double Jeopardy.** The Petitioner argues that his conviction in Count 2 for the lesser included offense of possession of a firearm during the commission of a dangerous felony violates his Fifth Amendment right to be free from double jeopardy. He claims that following the trial court's decision to direct a verdict of not guilty in Count 2, the State was precluded from prosecuting him on this charge because he had already been placed in jeopardy of this offense at trial. He also contends that the trial court's grant of a new trial pursuant to Tennessee Rule of Criminal Procedure 33(d) was only effective as to the first degree murder charge and asserts that the court's directed verdict of not guilty on the firearm count was final upon entry. Finally, he maintains that the trial court's ruling should be construed as a ruling pursuant to Tennessee Rule of Criminal Procedure 29 rather than Rule 33 because there was no evidence to weigh and the State failed to prove the underlying felony, which is an essential element of the firearm charge. The State responds that the Petitioner has waived the double jeopardy issue because he failed to raise it as a free-standing claim in the post-conviction court and because he entered a guilty plea to Count 2. We agree with the State that the Petitioner has waived this claim and that waiver notwithstanding, he is not entitled to relief.

Our review of the record shows that while the Petitioner referenced the double jeopardy issue in his pro se petition, he failed to pursue it as a free-standing issue in either of his amended post-conviction petitions and did not specifically incorporate the issues raised in his pro se petition into his amended petitions. Moreover, the Petitioner's arguments regarding double jeopardy that were made in his February 3, 2017 memorandum of law, which was filed after the presentation of post-conviction proof but before the parties made their arguments to the court, were confined to ineffective assistance of counsel. Furthermore, the Petitioner failed to pursue a free-standing double jeopardy issue in his arguments before the post-conviction court, choosing instead to raise this issue only as it related to counsel's ineffectiveness. As a result, the post-conviction court's order only addressed this double jeopardy issue within the context of the Petitioner's ineffective assistance of counsel claim. Because the Petitioner failed to raise the free-standing double jeopardy claim in his two amended petitions and failed to specifically incorporate his pro se petition raising this issue, he effectively abandoned this claim, choosing to proceed only on the issue of counsel's ineffectiveness in failing to argue that the Petitioner had already been placed in jeopardy of the Count 2 offense at trial. Cf. Abston v. State, No. W2014-02513-CCA-R3-PC, 2016 WL 3007026, at *8 (Tenn. Crim. App. May 17, 2016) (recognizing that two subsequently-filed post-

conviction petitions, which were characterized as amended petitions, abandoned the issues in the initial pro se petition).

Pursuant to the Post-Conviction Procedure Act, "[a] ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented[.]" T.C.A § 40-30-106(g). "Issues not addressed in the post-conviction court will generally not be addressed on appeal." Walsh v. State, 166 S.W.3d 641, 645 (Tenn. 2005) (citing Rickman v. State, 972 S.W.2d 687, 691 (Tenn. Crim. App. 1997); State v. White, 635 S.W.2d 396, 397-98 (Tenn. Crim. App. 1982)). Moreover, "an issue raised for the first time on appeal is waived." Cauthern v. State, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004) (citing State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996)). Because the record shows that the Petitioner failed to raise the free-standing double jeopardy issue in the post-conviction court, the Petitioner has waived this issue.

The Petitioner has also waived this double jeopardy claim by entering his guilty plea in Count 2 to possession of a firearm. "By entering a guilty plea, a defendant waives all nonjurisdictional procedural or constitutional defects." State v. Franklin, 919 S.W.2d 362, 368 (Tenn. Crim. App. 1995) (citing State v. Bilbrey, 816 S.W.2d 71, 75 (Tenn. Crim. App. 1991); State v. Wilkes, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984)). We note that "[i]n order to preserve an issue for appeal upon entering a guilty plea, a defendant must explicitly reserve the issue." Id. (citing Tenn. R. App. P. 3(b); Tenn. R. Crim. P. 37(b)(2)). Entry of a guilty plea waives a double jeopardy claim unless it is apparent from the existing record that this claim was raised in the trial court. State v. Rhodes, 917 S.W.2d 708, 710-11 (Tenn. Crim. App. 1995) (citing Menna v. New York, 423 U.S. 61, 62 (1975) (reversing, per curiam, the New York Court of Appeals decision that that the double jeopardy claim had been "waived" by entry of the petitioner's guilty plea because the petitioner raised a double jeopardy claim in the trial court)). We agree with the State that even if the Petitioner had, in fact, raised the free-standing double jeopardy issue in the post-conviction court, his guilty plea waived this issue because the record does not show that the Petitioner raised his double jeopardy claim in the trial court.

Waiver notwithstanding, we conclude that the Petitioner is not entitled to relief on this issue because the trial court's entry of a "directed verdict" on Count 2, which was contingent on the jury's guilty verdict in Count 1, did not preclude the Petitioner from being retried on Count 2. The record shows that the trial court only entered a "directed verdict" on Count 2 because the jury returned a verdict of guilty for first degree premeditated murder in Count 1, which was not an enumerated dangerous felony under Code section 39-17-1324(i). Later, when the court set aside the verdict for first degree

murder pursuant to Rule 33(d), the Petitioner returned to the position he held post-indictment.  As the Tennessee Supreme Court explained, a trial court's decision to reverse a defendant's conviction pursuant to Rule 33 based on the weight of the evidence does not preclude a retrial:

> [When a trial court] disagrees with a jury's resolution of <u>conflicting</u> evidence and concludes that a guilty verdict is against the weight of the evidence . . . [the trial court's decision] does not mean that acquittal was the only proper verdict.  Instead, the [trial] court sits as a "thirteenth juror" and disagrees with the jury's resolution of the <u>conflicting</u> testimony.  This difference of opinion no more signifies acquittal than does a disagreement among the jurors themselves.  A deadlocked jury . . . does not result in an acquittal barring retrial under the Double Jeopardy Clause.  Similarly, a[ ] [trial] court's disagreement with the jurors' weighing of the evidence does not require the special deference accorded verdicts of acquittal.

<u>State v. Ellis</u>, 453 S.W.3d 889, 898 (Tenn. 2015) (quoting <u>Tibbs v. Florida</u>, 457 U.S. 31, 42 (1982)); <u>see</u> <u>State v. Johnson</u>, 692 S.W.2d 412, 415 (Tenn. 1985) (Drowota, J., dissenting) (stating even if the trial judge concludes "despite the abstract sufficiency of the evidence to sustain the verdict, [that] the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, [he or she] may set aside the verdict, grant a new trial, and submit the issues for determination by another jury").  For all these reasons, the Petitioner is not entitled to relief on this issue.

**II.  Defective Indictment.**  The Petitioner also asserts that he is entitled to retroactive application of <u>Ayers II</u>, which would require this court to reverse and vacate his conviction for possession of a firearm and dismiss Count 2 for lack of adequate notice.  As to this issue, the State again responds that the Petitioner has waived this claim by failing to present it as a free-standing claim in the post-conviction court.  The State also argues that because <u>Ayers II</u> announced no new rule of constitutional law, the Petitioner is not entitled to retroactive application.  We conclude that the Petitioner has waived this issue and that, in any case, he is not entitled to relief.

Once again, the record shows that while the Petitioner challenged the validity of his indictment in his pro se petition, he failed to pursue this issue as a free-standing issue in either of his amended post-conviction petitions and did not specifically incorporate his pro se petition into his amended petitions.  The Petitioner's arguments regarding the validity of his indictment in his February 3, 2017 memorandum of law were all made within the context of counsel's ineffectiveness in failing to challenge his defective indictment.  More importantly, the Petitioner failed to pursue a free-standing claim regarding the validity of his indictment at the post-conviction hearing, choosing instead

to raise this issue only as it related to counsel's ineffectiveness. As a result, the post-conviction court's order only addressed the defective indictment issue within the context of the Petitioner's ineffective assistance of counsel claim. Because the Petitioner failed to raise a free-standing claim regarding the defective nature of his indictment in his two amended petitions and failed to specifically incorporate his pro se petition raising this issue, we again conclude that he effectively abandoned this issue. Cf. Abston, 2016 WL 3007026, at *8.

Consequently, we conclude that the Petitioner waived this issue by failing to raise it as a free-standing claim during the post-conviction hearing. See T.C.A § 40-30-106(g); Walsh, 166 S.W.3d at 645; Cauthern, 145 S.W.3d at 599. We also conclude that he waived this issue by entering his guilty plea in Count 2 to possession of a firearm. Franklin, 919 S.W.2d at 368; Tenn. R. App. P. 3(b); Tenn. R. Crim. P. 37(b)(2).

In any case, the Petitioner is not entitled to retroactive application of Ayers II. It simply strains reason to suggest that Ayers II, an unpublished opinion of this court, would constitute a new rule of constitutional law. See T.C.A. § 40-30-122; Bush v. State, 428 S.W.3d 1, 14-16 (Tenn. 2014); see also Tenn. S. Ct. R. 4(G)(1)-(2) (stating that unpublished opinions are considered persuasive authority except as between the parties to the case). Even if Ayers II did establish a new rule of constitutional law, we question whether this rule amounts to a "fairness safeguard . . . implicit in the concept of ordered liberty" requiring retroactive application. T.C.A. § 40-30-122; Bush, 428 S.W.3d at 17-21. We do not believe that Ayers II affected the accuracy of the Petitioner's conviction. Bush, 428 S.W.3d at 20-21. We are also unconvinced that Ayers II created a "watershed rule of criminal procedure" given Tennessee's well-established precedent requiring that all criminal defendants be provided adequate notice of the accusations against them. See State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997); State v. Byrd, 820 S.W.2d 739, 741 (Tenn. 1991); VanArsdall v. State, 919 S.W.2d 626, 630 (Tenn. Crim. App. 1995); State v. Smith, 612 S.W.2d 493, 497 (Tenn. Crim. App. 1980); see also State v. Duncan, 505 S.W.3d 480, 491 n.13 (Tenn. 2016) (noting that while the best practice was for prosecutors to designate the dangerous felony that is intended to be the predicate for the employment of a firearm charge, an indictment that failed to identify which of the two possible predicate felonies the State would be relying on at trial was not defective); State v. Angela Ayers, No. W2014-00781-SC-R11-CD (Tenn. Oct. 24, 2016) (order) (remanding Ayers I for reconsideration in light of Duncan). Accordingly, the Petitioner is also not entitled to relief on this issue.

**III. Ineffective Assistance of Counsel.** Lastly, the Petitioner argues that the post-conviction court erred in denying his petition for post-conviction relief. He claims defense counsel provided ineffective assistance by advising him to accept the plea and that counsel's ineffectiveness caused him to enter a plea that was unknowing,

- 18 -

involuntary, and unintelligent. The State counters that the Petitioner failed to show by clear and convincing evidence that but for the alleged deficiencies of defense counsel, he would have rejected the plea agreement and would have insisted upon a trial. We agree with the State and conclude that the Petitioner is not entitled to relief.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction or sentence is void or voidable because of an abridgement of a constitutional right. T.C.A. § 40-30-103. Our review of mixed questions of law and fact, such as a claim of ineffective assistance of counsel or the validity of a guilty plea, is de novo with no presumption of correctness. Felts v. State, 354 S.W.3d 266, 276 (Tenn. 2011); Lane v. State, 316 S.W.3d 555, 562 (Tenn. 2010).

A post-conviction petitioner has the burden of proving the factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); Tenn. Sup. Ct. R. 28, § 8(D)(1); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Lane, 316 S.W.3d at 562; Grindstaff v. State, 297 S.W.3d 208, 216 (Tenn. 2009); Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

"The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution" and "this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases." Vaughn v. State, 202 S.W.3d 106, 116 (Tenn. 2006) (citations omitted) (internal quotation marks omitted). In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). A petitioner successfully demonstrates deficient performance when the petitioner establishes that his attorney's conduct fell "below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). In order to satisfy the "prejudice" requirement in the context of a guilty plea, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). "Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." Goad, 938 S.W.2d at 370.

Counsel's ineffective assistance may affect the validity of a petitioner's guilty plea. Hill, 474 U.S. at 56. To be valid, a guilty plea must be entered knowingly,

voluntarily, and intelligently. Lane, 316 S.W.3d at 562 (citing State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977); North Carolina v. Alford, 400 U.S. 25, 31 (1970); Brady v. United States, 397 U.S. 742, 747 (1970); Boykin v. Alabama, 395 U.S. 238, 242-44 (1969)). When determining whether a guilty plea was knowingly, voluntarily, and intelligently entered, the court must consider "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Id. (quoting Grindstaff, 297 S.W.3d at 218). In making this determination, a post-conviction court may consider a number of factors, including:

> 1) the defendant's relative intelligence; 2) the defendant's familiarity with criminal proceedings; 3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; 4) the advice of counsel and the court about the charges and the penalty to be imposed; and 5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

Howell v. State, 185 S.W.3d 319, 330-31 (Tenn. 2006) (citing Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993)). A plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship, 858 S.W.2d at 904 (quoting Boykin, 395 U.S. at 242-43).

First, the Petitioner asserts that defense counsel was ineffective in failing to challenge his second prosecution on Count 2 as violative of double jeopardy, which made his plea involuntary, unknowing, and unintelligent. He contends that if counsel had properly researched and advised him that the State's continued prosecution of him on Count 2 following the trial court's directed verdict violated double jeopardy, then there is a reasonable probability that he would not have entered his guilty plea and would have chosen to go to trial.

Second, the Petitioner argues that defense counsel was ineffective in failing to properly advise him that Count 2 was defective for lack of notice because it did not charge an enumerated dangerous felony. The Petitioner claims that although defense counsel had been a prominent critic of the State's method of indictment in this case and had consistently argued in the two years prior to the Petitioner's case that the failure to charge an enumerated dangerous felony made the indictment defective, counsel nevertheless persuaded him to accept the plea agreement offered by the State with the promise that he could challenge this issue on post-conviction. The Petitioner contends that but for counsel's deficient performance on this issue, he would not have pled guilty and would have insisted on going to trial. He also claims that because he was not properly advised of the defect in his indictment, his plea was not knowing, intelligent, or voluntary.

- 20 -

In its order denying relief, the post-conviction court found that although defense counsel tried to persuade the State to allow the Petitioner to only enter a guilty plea to a lesser included offense in Count 1, the State refused to settle the case without including the firearms charge in Count 2. The court also found that defense counsel advised the Petitioner to accept the State's plea offer rather than to risk a higher sentence at a new trial. Finally, the court noted the Petitioner's admission that serving only nine years in confinement, rather than a potential life sentence, greatly influenced his decision to enter the plea agreement. Ultimately, the post-conviction court held that the Petitioner had failed to establish, by clear and convincing evidence, that he was prejudiced by defense counsel's alleged deficiencies. It also held that the Petitioner's guilty plea was voluntary, knowing, and intelligent because "he made a rational, educated, and volitional decision to enter into the negotiated plea agreement rather than face a potential[ly] harsher sentence at a new trial."

The record fully supports the trial court's findings of fact and conclusions of law. At the post-conviction hearing, defense counsel testified that his research showed that the effect of the court's directed verdict was that the Petitioner's case would proceed again under the same indictment. Counsel said that although he had talked to the State about the legal problems with Count 2, the State threatened to withdraw the plea agreement and transfer the case to another division if the Petitioner chose to litigate the legal issues surrounding Count 2. Defense counsel explained that after the trial court set aside the verdict of guilty on the first degree murder charge, the Petitioner had two options—he could enter a plea agreement on Count 1 and Count 2 or he could litigate the issues regarding Count 2 and face a life sentence in a second trial. Counsel said that he advised the Petitioner to take the offer, reduce his potential life sentence to nine years, and challenge the legality of Count 2 on post-conviction. He said the Petitioner ultimately understood his options and accepted the plea agreement with the intent of raising the legality of Count 2 on post-conviction. Defense counsel stressed that a successful challenge on the firearm charge would still have left the first degree murder charge as a triable offense for the Petitioner. He also emphasized that the State never offered any plea agreements allowing the Petitioner to plead guilty to only Count 1 of the indictment. After evaluating all the circumstances in this case, defense counsel concluded that the Petitioner's best option was to forego any challenges to Count 2 at the trial court level in order to the obtain the most favorable sentence for the Petitioner.

While the Petitioner claimed that but for counsel's deficient advice regarding Count 2, he would not have entered his guilty plea to the firearm charge, the Petitioner never testified that he would have rejected the plea as a whole, which allowed him to plead guilty to the lesser included voluntary manslaughter charge and receive an effective nine-year sentence, and would have insisted upon going to trial. In fact, the Petitioner admitted that had he not entered his guilty plea, he would have proceeded to trial on the

first degree murder charge, where he would have faced a substantially longer sentence than the one in the plea agreement. The Petitioner acknowledged that avoiding a life sentence was the primary motivating factor in entering his guilty plea.

The record shows that the only way for the Petitioner to avoid the risk of a first degree murder conviction and accompanying life sentence was to accept the State's offer of an effective nine-year sentence in exchange for his guilty pleas to voluntary manslaughter and possession of a firearm during the commission of a dangerous felony. Because the Petitioner failed to show that he was prejudiced by defense counsel's alleged deficiencies, we conclude that defense counsel did not provide ineffective assistance. We also conclude that the Petitioner's plea was knowing, voluntary, and intelligent.

## CONCLUSION

Based on the aforementioned authorities and reasoning, we affirm the post-conviction court's judgment.

_____
CAMILLE R. MCMULLEN, JUDGE